Maria **TOWNSEND**, Individually and as Next Friend to and Guardian of Daniel Townsend, David Townsend, and Ann Elizabeth Townsend, Minors, and on Behalf of the Estate of C.H. Townsend, Deceased, Appellants,

v.

**CATALINA AMBULANCE COMPANY, INC.**, Appellee.

No. 13–91–564–CV.

Court of Appeals of Texas, Corpus Christi.

June 30, 1993.

Patrick P. Rogers, Michael S. Lee, Porter, Rogers, Dahlman, Gordon & Lee, Corpus Christi, for appellants.

B. Buck Pettitt, Rose Marie Guerra Reyna, Lewis & Pettitt, McAllen, for appellee.

Before SEERDEN, KENNEDY and DORSEY, JJ.

## OPINION

SEERDEN, Justice.

This case involves claims under the wrongful death and survival statutes, and the Texas Deceptive Trade Practice—Consumer Protection Act (DTPA). A jury trial resulted in a verdict and judgment for appellants. The trial court awarded each appellant actual damages and $2,000 DTPA additional mandatory damages; ordered that appellants take nothing by way of exemplary/additional damages; and, denied appellants' recovery of attorneys' fees.

By two points of error, appellants complain that the trial court erred in not awarding exemplary/additional damages and attorneys' fees. By eight cross points, appellee Catalina Ambulance Company, Inc. (Catalina) complains of sufficiency of the evidence to establish proximate and producing cause. By two cross points, Catalina contends that the trial court erred in awarding damages in excess of the limit of civil liability provisions as set out in the Medical Liability and Insurance Improvement Act (the Act),[1] and in submitting DTPA questions concerning its conduct. We reverse and remand in part and reform and, as reformed, affirm in part.

On July 14, 1988, Catalina, an emergency ambulance service, received a telephone call requesting medical assistance for C.H. Townsend. Catalina's attendants, George Garcia and John Fuentes, responded to the call. They moved Townsend down the stairs from his second floor apartment to the ambulance, and transported him to the hospital where he was pronounced dead upon arrival.

Appellants' petition alleged that Catalina was negligent and grossly negligent, and that this proximately caused Townsend's death. Appellants' petition also alleged that Catalina committed acts in violation of the DTPA, and that the acts were the producing cause of Townsend's death. *See* TEX.BUS. & COM.CODE ANN. § 17.46(b) (Vernon 1987). Further, appellants pleaded that Catalina breached an implied warranty in violation of the DTPA. *See* TEX.BUS. & COM.CODE ANN. § 17.50(a)(2) (Vernon 1987).

By cross points five and six, Catalina raises factual and legal sufficiency challenges to the jury's finding that the acts of Catalina proximately caused Townsend's death. Catalina urges that appellants failed to show any causation or relationship between the conduct of Catalina and the death of Townsend.

1. TEX.REV.CIV.STAT.ANN. art. 4590i (Vernon Pamph.1993).

In considering a "no evidence," "insufficient evidence," or an "against the great weight and preponderance of the evidence" point of error, we will follow the well-established test set forth in *Pool v. Ford Motor, Co.*, 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex. 1950); *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Fin. Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L.Rev. 361 (1960).

"Proximate cause consists of cause in fact and foreseeability.... Cause in fact is 'but for cause,' meaning the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred." *El Chico Corp. v. Poole*, 732 S.W.2d 306, 313 (Tex.1987). "Proximate cause questions are peculiarly within the province of the fact finder." *Glover v. City of Houston*, 590 S.W.2d 799, 801 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ); *see First Fin. Dev. Corp. v. Hughston*, 797 S.W.2d 286, 293 (Tex.App.—Corpus Christi 1990, writ denied).

■ We conclude that some evidence exists which supports the jury's finding that the acts of Catalina were a proximate cause of the injuries to appellants. There was testimony that Townsend was alive when he was placed in the ambulance. David, Townsend's son, testified that he rode in the ambulance to the hospital, and that he heard his father coughing and saw him choking. He also saw liquid coming out of his father's mouth, yet he did not see Garcia working on him. Appellant's expert, Dr. John A. Wells, testified that lack of suctioning could have caused Townsend's death. From the evidence presented, the jury could have inferred that Townsend died en route to the hospital, and, but for the lack of suctioning, the death, which could have been reasonably foreseen, would not have occurred. Since there is some evidence of proximate cause, we over-

rule Catalina's "no evidence" challenge, cross point five.

■ In reviewing "factual insufficiency," we look to all the evidence which supports and contradicts the finding of proximate cause. Evidence concerning Townsend's time of death is controverted. Dr. Louis Christian, Catalina's medical expert, testified that in his opinion the attendants did everything they could because Townsend was dead when the attendants arrived. Garcia testified that Townsend's death occurred before he was loaded into the ambulance. However, Daniel, Townsend's son, Maria, Townsend's wife, and Carolyn Menuez, a neighbor, testified that Townsend was alive when he was placed in the ambulance. According to the testimony, he was breathing, his color was "normal," his eyes were open and moving, and he squeezed Maria's hand before he was loaded into the ambulance. David who rode to the hospital with Townsend testified that his father was breathing when they began traveling to the hospital.

The evidence concerning the emergency medical care Townsend received while in the ambulance is also controverted. Garcia testified that he performed cardiopulmonary resuscitation while en route to the hospital and suctioned Townsend's mouth when he needed it. David maintained that on three occasions he looked back and saw his father cough. David testified that "[his father] looked like he was choking," and that he did not see Garcia render services to his father even though Fuentes, the ambulance driver, told Garcia several times to "suction him out."

Dr. Wells explained that if a patient was not adequately suctioned during his transport to the hospital and he was choking and coughing, the patient would have become hypoxic, meaning that he would have an inadequate amount of oxygen in his lungs and in his tissue. Dr. Wells opined that hypoxia was Townsend's biggest problem. Dr. Wells testified that, in his opinion, if there were no attempts to suction, then according to one's level of training, even as an emergency medical technician, this was not adequate medical care. The patient's

life would have been in jeopardy, and that failure to suction could be a cause of death. During transport, if Townsend was coughing and choking, Dr. Wells opined that every possible attempt should have been made to clear the airway. This would be true even though Townsend might not have been breathing for a certain amount of time as alleged by the attendants. Dr. Wells testified that based upon reasonable medical probability, it was his opinion that the failure of an ambulance attendant to attempt to resuscitate Townsend could have been a cause of Townsend's death. He testified that the conduct of the Catalina ambulance attendants could have made a difference.

After reviewing all the evidence, we conclude that there was sufficient evidence from which a jury could find that a proximate cause of death was Catalina's negligence through the acts of its employees. We overrule Catalina's factual sufficiency challenges on proximate cause, cross point six.

By cross points three and four, Catalina complains of no evidence or in the alternative, insufficient evidence, to support the jury's finding that Catalina engaged in false, misleading, or deceptive acts or practices that were the producing cause of Townsend's death. Again, Catalina urges that appellants failed to show any causation or relationship between the conduct of Catalina and the death of Townsend.

■ "Producing cause has been defined as an efficient, exciting, or contributing cause that, in a natural sequence, produces the complained of injuries or damages." *Knebel v. Port Enter., Inc.*, 760 S.W.2d 829, 831 (Tex.App.—Corpus Christi 1988, writ denied); *see Rourke v. Garza*, 530 S.W.2d 794, 801 (Tex.1975). Producing cause in a DTPA case does not encompass foreseeability as does proximate cause. *Hycel, Inc. v. Wittstruck, M.D.*, 690 S.W.2d 914, 922 (Tex.App.—Waco 1985, writ dism'd) (citing *Rotello v. Ring Around*

*Prod., Inc.*, 614 S.W.2d 455, 461 (Tex.Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.)). The question regarding producing cause is not whether Catalina reasonably foresaw that the damage would result from the false, misleading, or deceptive acts, but whether Catalina's actions, in a natural sequence, excited, contributed to, or factually caused the damage. *See Hycel*, 690 S.W.2d at 922–23.

Catalina admitted that on July 14, 1988, it represented to the public that it had qualified emergency medical personnel to render emergency medical aid to people in emergency medical need.

■ Reviewing the evidence as set out in cross points five and six above, under the appropriate standards, we conclude that the evidence is legally and factually sufficient to support the jury's finding of producing cause under section 17.46(a) of the DTPA. The jury was justified in finding that Catalina's misrepresentation of its emergency medical care, in a natural sequence, contributed to Townsend's death. Catalina's cross points three and four are overruled.

In view of the disposition of cross-points three and four, we need not reach Catalina's first and second cross-points which challenge the sufficiency of the evidence to support the jury's finding of producing cause under appellants' breach of warranty claim.

■ By cross points nine and ten, Catalina contends that the trial court erred in awarding damages in excess of $500,000, the amount allowed under the civil liability provisions of the Medical Liability and Insurance Improvement Act, article 4590i, section 11.02, and in submitting DTPA questions concerning Catalina's conduct because said actions are barred by section 12.01 of article 4590i.[2] Catalina urges that it is a health care provider. Further, Catalina urges that it was performing as an

---

**2.** Tex.Rev.Civ.Stat.Ann. art. 4590i (Vernon Pamph.1993). Catalina also refers to section 11.03 of the Act which provides an alternative partial limit on civil liability. Section 11.03

applies only in the event that section 11.02(a) is stricken from the Act or is otherwise invalidated by a method other than through legislation.

agent of a physician and, as such, is entitled to full protection of the Act.

Section 11.02(a) provides:

> In an action on a health care liability claim where final judgment is rendered against a physician or health care provider, the limit of civil liability for damages of the physician or health care provider shall be limited to an amount not to exceed $500,000.

TEX.REV.CIV.STAT.ANN. art. 4590i, § 11.02 (Vernon Pamph.1993).

Section 12.01(a) provides exception from certain laws as follows:

> Notwithstanding any other law, no provision of Sections 17.41–17.63, Business & Commerce Code, shall apply to physicians or health care providers as defined in Section 1.03(3) of this Act, with respect to claims for damages for personal injury or death resulting, or alleged to have resulted, from negligence on the part of any physician or health care provider.

Tex.Rev.Civ.Stat.Ann. art. 4590i, § 12.01(a) (Vernon Pamph.1993).

Article 4590i, section 1.03(3) defines health care provider as:

> [A]ny person, partnership, professional association, corporation, facility, or institution duly licensed or chartered by the State of Texas to provide health care as a registered nurse, hospital, dentist, podiatrist, pharmacist, or nursing home or an officer, employee, or agent thereof acting in the course and scope of his employment.

Tex.Rev.Civ.Stat.Ann. art. 4590i, § 1.03(3) (Vernon Pamph.1993).

Catalina relies on the testimony of Lupita Weiner, president of Catalina, as the basis for its agency argument. Ms. Weiner testified that Catalina worked under a doctor's license and supervision.

The Act's definition section 1.03(3) specifically delineates entities that are health care providers, including hospitals and nursing homes. An ambulance company is not one of those specifically listed. "Under the rules of statutory construction, the express mention of one person, thing, consequence or class is tantamount to the ex-

press exclusion of all others." *Lenhard v. Butler,* 745 S.W.2d 101, 105 (Tex.App.—Fort Worth 1988, writ denied). Further, we are unable to determine from the testimony of Weiner whether Catalina is an officer, employee, or agent of a physician.

We conclude that Catalina's civil liability is not limited, nor is it exempted from DTPA claims. Catalina's cross points nine and ten are overruled.

By point of error one, appellants, individually and on behalf of the estate of C.H. Townsend, contend that the trial court erred in disregarding the law and evidence, as it failed to enter judgment for attorneys' fees.

"[E]ach consumer who prevails shall be awarded court costs and reasonable and necessary attorneys' fees." TEX.BUS. & COM.CODE ANN. § 17.50(d) (Vernon 1987). The parties stipulated in open court that the trial court would award attorney's fees in accordance with the jury's verdict. In addition to actual damages and pre-judgment interest, the trial court awarded appellants DTPA mandatory damages. The record reveals some evidence regarding reasonable and necessary attorneys' fees. Attorney Michael Lee testified that he was familiar with the handling of cases involving violations of the Texas DTPA, and opined that attorney's fees in the amount of 33⅓ percent of the recovery together with expenses was reasonable and necessary. He also testified as to reasonable and necessary fees for any subsequent appeals.

The recovery of attorneys' fees is provided for by statute, and the judgment reflects that the trial court found for plaintiff on the DTPA theory of recovery. The record reflects some evidence regarding reasonable and necessary attorneys' fees. We conclude that the trial court erred in refusing to award attorneys' fees to appellants. Appellants' point one is sustained.

By point of error two, the individual appellants complain that the trial court erred in disregarding the evidence and not awarding exemplary/additional damages as found by the jury in its verdict. Appellants

urge that evidence presented to the jury at the time of trial clearly supports the finding of the "knowingly" questions and the "gross negligence" questions and therefore supports the findings of exemplary/additional damages.

When the jury's findings are supported by the evidence, the trial judge may not disregard the jury's answers even though the great weight and preponderance of the evidence might be to the contrary. *Texas Paper Stock Co. v. Corpus Christi Food City, Inc.*, 609 S.W.2d 259, 261 (Tex.Civ.App.—Corpus Christi 1980, no writ); *Gulf, Colorado & Santa Fe Ry. Co. v. Deen*, 158 Tex. 466, 312 S.W.2d 933, 937 (1958), *cert. denied*, 358 U.S. 874, 79 S.Ct. 111, 3 L.Ed.2d 105 (1958); *see* Tex.R.Civ.P. 301; *Rauscher Pierce Refsnes, Inc. v. Koenig*, 794 S.W.2d 514, 516 (Tex.App.—Corpus Christi 1990, writ denied). We review this as a no evidence point. *See Arch Constr. Inc. v. Tyburec*, 730 S.W.2d 47, 51 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).

The standard for determining whether or not there was evidence to support a finding of gross negligence, is whether there is any evidence of "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Hylander v. Groendyke Transp., Inc.*, 732 S.W.2d 692, 694 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.) (quoting *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex. 1981)). Generally, to recover exemplary damages, the plaintiff must show that the offending party acted intentionally or willfully, or with a degree of gross negligence that approximated a fixed purpose to bring about plaintiff's injury. *Hylander*, 732 S.W.2d at 694. The plaintiff must show that the defendant was consciously indifferent to his rights, welfare and safety. *Hylander*, 732 S.W.2d at 694 (quoting *Ford Motor Co. v. Nowak*, 638 S.W.2d 582, 593 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.)). "Conscious indifference denotes a decision, in the face of an impending harm

to another party, not to care about the consequences of the act which may ultimately lead to that harm." *Hylander*, 732 S.W.2d at 694.

At the time this action commenced, section 17.50(b)(1) of the DTPA provided for additional damages of not more than three times the amount of actual damages in excess of $1,000 if the trier of fact finds that the conduct of the defendant was committed knowingly. Tex.Bus. & Com.Code Ann. § 17.50(b)(1) (Vernon 1987) (amended Sept. 1, 1989). The DTPA defines "knowingly" as "actual awareness of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim.... [A]ctual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness." Tex. Bus. & Com.Code Ann. § 17.45(9) (Vernon 1987).

In addition to the contentions of negligence on the part of the ambulance attendants, appellants urge that because Weiner, Catalina's president, knew Garcia was not experienced to work in an ambulance, and Catalina failed to properly train or evaluate Garcia, exemplary/additional damages should not be disturbed. We agree.

With respect to a corporation's liability for the gross negligence of its servants, the general rule in Texas provides that:

Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,

(a) the principal authorized the doing and the manner of the act, or

(b) the agent was unfit and the principal was reckless in employing him, or

(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

(d) the employer or a manager of the employer ratified or approved the act.

*Missouri Pacific R.R. Co. v. Dawson*, 662 S.W.2d 740, 743 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.) (citing *King v. McGruff*, 149 Tex. 432, 234 S.W.2d 403, 405

(1950)); *see Purvis v. Prattco, Inc.,* 595 S.W.2d 103, 104 (Tex.1980).

Weiner testified that she had reviewed Garcia's employment application and knew Garcia, a certified Emergency Medical Technician (EMT), had no ambulance experience prior to his employment with Catalina. Horacio Cantu, the crew supervisor and director of operations, placed Garcia on probation when he hired him as an EMT attendant. Weiner signed the form that placed Garcia on probation from June 16, 1988, to December 16, 1988. This time period included the day on which the incident occurred.

The following testimony relates to Weiner's supervision of Garcia:

Q: Prior to July 14, 1988, you didn't do that [ride with new employees and evaluate their performance], did you?

A: [Ms. Weiner] I personally, no.

Q: Catalina didn't do it, anybody didn't do it, because you didn't have time to do it?

A: I don't recall.

       \*    \*    \*    \*    \*    \*

Q: Well, do you remember telling me in your deposition on February 27th, 1989, that you didn't have time to ride with George Garcia to see how he was doing?

A: I personally did not have any time to go ride with him.

Q: Okay. Do you recall telling me that we did not have enough time to verify how he was doing?

A: Yes, sir, I remember that.

Q: All right. And is that true?

A: That is true.

       \*    \*    \*    \*    \*    \*

Q: Okay. Did Catalina have enough time to verify whether or not George Garcia was taking his classroom ability to the field?

A: There was not enough time.

There is some evidence which supports the jury's finding that Catalina, through its president acting in the scope of her employment, acted knowingly. Further, there is some evidence of intentional conduct and a conscious disregard for the rights of the appellants which supports a finding of gross negligence. Looking at the evidence in the light most favorable to the jury's answer, we conclude that there is evidence of probative force in the record to support the jury's award of exemplary/additional damages. The trial court erred in disregarding the jury's answer. Point of error two is sustained.

By cross-points seven and eight, Catalina challenges the sufficiency of the evidence to warrant submission of a fact question on gross negligence to the jury. As we have sustained appellants' point of error one, it is unnecessary for us to address Catalina's cross-points. We overrule cross-points seven and eight.

We reform the judgment to include an award of exemplaries/additionals as found by the jury in the amount of $100,000 to be divided equally between Maria, David, Daniel, and Ann Elizabeth Townsend, with postjudgment interest to run from the date the judgment was signed. We reverse that portion of the judgment which denies attorneys' fees and remand for the trial court's determination of the amount of reasonable and necessary attorneys' fees to be awarded under appellants' DTPA cause of action. As reformed, we affirm the remainder of the trial court's judgment.