**Joanne CLEMENTS and Riley Clements, Appellants,**

v.

**Scott CONARD & Las Colinas Family Practice, Appellees.**

**Nos. 07–99–0165–CV, 07–99–0358–CV.**

Court of Appeals of Texas, Amarillo.

April 24, 2000.

Rehearing Overruled June 1, 2000.

James Beggs, Beggs & Woodruff, Irving, for appellants.

Michelle E. Robberson, Paige A. Lueking, Cooper & Scully Dallas, for appellees.

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

JOHN T. BOYD, Chief Justice.

In two issues, appellants Joanne and Riley Clements contend the trial court reversibly erred in granting summary judgment in favor of appellees Scott Conard, M.D. and Las Colinas Family Practice, P.A. [LCFP].[1] In their two issues, appellants argue 1) the trial court erred in granting the judgment on the basis of the affirmative defense of limitations, and 2) although "[t]he evidence strongly supports a finding of spoliation, . . . the trial court

abused its discretion in refusing to give plaintiffs [the Clements] the benefit of the doctrine." Disagreeing that error is shown, we affirm the judgments of the trial court.

In order to adequately address the first issue, it is necessary to recount the underlying factual history in some detail. Joanne Clements [Clements][2] first went to Dr. Scott Conard [Conard][3] on May 11, 1995. According to her, she first saw Conard at the LCFP on May 11, 1995. At that time, she was 37 years old and was complaining of "swelling and soreness in her breasts, chest pain, swollen ankles, and the fact that she had not had a menstrual period in several months." Later, she complained that she was losing her hair. She averred that "she completed a two-page written medical history for Dr. Conard that included her complaints, but that this document was missing from the records Dr. Conard was able to produce."

Specifically, Clements asserts, the missing records would show her complaints of chest pain. She also testified that, as revealed by the number of canceled checks to that facility, her banking records show that she made a total of 19 visits to "Dr. Conard or his representative" which would cover a period from May of 1995 through March or April 1996. That figure, she argues, is in sharp contrast to the production by Conard of records showing only five visits. She contends that the records Conard produced were only those from the Coppell Creek Family Medical Center [CCFMC], a professional association also owned and operated by Conard, but which was separate from LCFP. Although Clements was originally a patient at LCFP, she does not dispute that she continued her treatment at CCFMC.

---

1. The cases against Conard and LCFP were consolidated for purposes of this appeal.

2. Although both Joanne and Riley Clements are appellants, for convenience, throughout this opinion, by using the term "Clements," we only refer to Joanne unless otherwise specifically indicated.

3. Although both Conard and LCFP are appellees, we will only refer to Conard throughout the opinion, unless otherwise specifically indicated.

Conard's records indicated that Clements's May 11, 1995 complaints were of high blood pressure, being overweight, and swelling in her ankles. Clements, however, asserts that even though she focused on the swelling in her feet, she also mentioned chest pain and sores on her breasts. At her second visit on May 31, 1995, Conard's records indicated that Clements complained of swollen legs and feet, painful burning in her hands, and the absence of a menstrual period for several months. Again, although Clements agrees she made those complaints, she also contends she complained about chest pain, sores on her breasts, and hair loss.

As a means of ascertaining the reason for Clements's amenorrhea [lack of menstruation], Conard ran some blood tests and prescribed Provera to stimulate menstruation. He also prescribed medication to reduce her blood pressure. He did not order a mammogram or perform a pap smear at that time because he did not believe either of those tests were indicated. Both Clements and Conard agree that May 31, 1995, was the last time that Conard personally saw Clements as a patient.

In September 1995, Conard referred Clements to, and she began seeing, Dr. Anthony Swaldi [Swaldi]. He was the only doctor she saw from September 1995 until February 1996. Although Clements continued seeing Swaldi for other problems, in February 1996, she went to see Dr. Fred Meggs, an obstetrician-gynecologist. Meggs ordered a mammogram and, as a result of that mammogram, diagnosed Clements as having breast cancer. On March 8, 1996, Clements had a radical mastectomy, removing her left breast.

On February 20, 1998, Clements sent Conard and LCFP a notice letter as required by the Medical Liability and Insurance Improvement Act [the Act], Tex.Rev. Civ. Stat. Ann. art. 4590i (Vernon Supp. 2000), and filed the lawsuit underlying this appeal on May 1, 1998. Consequently, in order to be timely, the limitations period must have begun on or after February 16, 1996. The basis of Conard's successful motion seeking summary judgment was that the limitation period began on May 31, 1995, the date of Clements last contact with Conard, and the suit was barred by limitations.

We now turn to our legal analysis. When asserting limitations, a summary judgment movant must conclusively establish the bar of limitations. *Jennings v. Burgess*, 917 S.W.2d 790, 793 (Tex.1996). If the nonmovant asserts that a tolling provision applies, the movant must conclusively negate the tolling provision's application to establish entitlement to summary judgment. *Id.* In conducting our analysis, we must disregard all evidentiary conflicts, accept as true all evidence and reasonable inferences therefrom favorable to the nonmovant, and resolve any doubts in her favor. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985).

## APPLICABILITY OF LIMITATIONS IN CONARD'S SUMMARY JUDGMENT

Section 10.01 of the Act governs medical malpractice claims. It provides that notwithstanding any other law, a person may not bring a health care liability claim unless the person files the action within two years of the tort. By virtue of section 4.01 of the Act, a person may extend the two-year period for 75 days by giving notice of a claim under the Act. Tex.Rev.Civ. Stat. Ann. art. 4590i, §§ 4.01 & 10.01 (Vernon Supp.2000). The statute abolishes the discovery rule in cases within its purview and imposes an absolute two-year period of limitations regardless of when an injured party learns of the injury. *Jennings*, 917 S.W.2d at 793.

Under the statute, in order to be timely, a suit must be filed within two years of 1) the date the tort occurs, 2) the date the health care treatment that is the subject of the claim ends, or 3) the date the hospitalization for which the claim is

made ends. *Voegtlin v. Perryman*, 977 S.W.2d 806, 810 (Tex.App.—Fort Worth 1998, no writ). However, it does not permit a plaintiff to simply choose the date which is most suitable. *Bala v. Maxwell*, 909 S.W.2d 889, 891 (Tex.1995). If the date of the alleged negligence can be ascertained, then limitations begins to run from that date. *Husain v. Khatib*, 964 S.W.2d 918, 919 (Tex.1998). Furthermore, where the date of the negligence is readily ascertainable, the limitations period must be measured from that date and any subsequent course of treatment is immaterial. *Id.*

Conard argues that the *Husain* case is determinative of this issue. That reliance warrants a discussion of the case. In *Husain*, the plaintiff, Ilham Khatib, complaining of a thickness in her left breast, visited Dr. Tehmina Husain, a gynecologist, on December 5, 1989. Tehmina ordered a mammogram, and on January 25, 1990, told Khatib that the mammogram showed fibrocystic disease, no cancer. She referred Khatib to her husband, Dr. Asif Husain, for a second opinion, and he agreed with the diagnosis. On September 26, 1991, Tehmina examined Khatib's breasts during a consultation arising from an unrelated complaint. She did not order any tests at that time.

On August 25, 1992, Tehmina again examined Khatib's breasts and ordered a mammogram. Included in the summary judgment evidence were records from the radiology firm that performed the mammogram. Those records indicated that the lab notified Tehmina on September 3, 1992, that the results suggested cancer. Khatib testified that on September 8, 1992, Tehmina told her that her pap smear would have to be redone and that she needed to meet with Dr. Asif Husain to get her mammogram results.

Approximately six months later, on May 26, 1993, Khatib's attorney gave written notice of her claim to Tehmina Husain. On November 15, 1993, suit was filed on Khatib's behalf against Tehmina Husain,

her husband Asif Husain, the radiologist who interpreted the January 1990 mammogram, and the radiologist's employer. Based upon limitations, the trial court granted summary judgment in favor of the defendants. Upon appeal, the court of appeals reversed as to Tehmina Husain, but affirmed as to the other defendants. The supreme court reversed the court of appeals as to Husain, and rendered a take-nothing judgment in favor of all defendants.

En route to its decision, the supreme court noted that the dates of the alleged negligence were easily ascertainable in that any negligence, at the latest, could only have occurred at the time of the September 26, 1991 exam. The court noted the statute of limitations period is measured from one of three dates: 1) the date of the tort; 2) the last date of relevant treatment, or 3) the last date of relevant hospitalization, and it pointed out that the statute does not permit a plaintiff to simply pick out the most favorable date. *Husain*, 964 S.W.2d at 919. The purpose of the provisions for measuring limitations from the last date of treatment or hospitalization, it observed, is to aid a plaintiff who was injured during a period of hospitalization or a course of medical treatment but has difficulty in ascertaining the precise date of injury. *Id.* It is only in that type of situation that the statute resolves doubts about the time of accrual in the plaintiff's favor by using the last date of treatment or hospitalization as a proxy for the actual date of the tort. However, if the date of the negligence can be ascertained, then there are no doubts to resolve and limitations must be measured from the date of the tort. *Husain*, 964 S.W.2d at 919. Accordingly, the high court concluded that because the date was ascertainable and the suit was filed after the running of the limitation period, the trial court had been correct in rendering its summary judgment. *Id.* at 920.

In this case, and under this record, it is undisputed that the last time Clem-

ents physically saw Conard was in May of 1995. Although Clements's brief states that she testified she saw Conard through "March or April of '96," examination of the portion of the record cited in support of that argument reveals that her actual testimony was that she had seen Conard "or his representative" some 19 times during that period. Indeed, in her deposition, Clements admitted that she only actually saw Conard three times and "[t]hey were all in May" of 1995.

■ Clements also argues that because one of her experts, Dr. Clark Holmes, testified that from his review of "the medical records," Clements was seen at the LCFP and by Conard numerous other times between May 11, 1995, and March of 1996. Because of that, he believed it was not possible to ascertain the date of Conard's last examination. However, the medical records attached to the affidavit do not support the affiant's conclusion that Clements was seen by Conard after May 1995. Without such support, and without a showing of personal knowledge, Dr. Holmes's conclusion is not competent summary judgment evidence. *See Radio Station KSCS v. Jennings,* 750 S.W.2d 760 (Tex.1988); *Harley–Davidson Motor Company, Inc. v. Young,* 720 S.W.2d 211 (Tex. App.—Houston [14th Dist.] 1986, no writ).

Clements additionally posits that even though she was seeing Swaldi subsequent to May 1995, Conard remained her "primary care physician" under her HMO plan and, as such, was responsible for her care. Because he remained in that capacity, she reasons, the fact that she did not actually see Conard during her visits to Swaldi, and Swaldi never consulted Conard as to Clements's care, is irrelevant. This is particularly true, she argues, because as her primary care physician, he was the only doctor who could refer her to other doctors. Thus, she concludes, limitations did not begin to run as to Conard until her last visit with Swaldi, which was within the limitation period. We disagree.

■ To accept Clements's argument would be to extend the limitations period based upon care given her by another person. We cannot agree that the mere designation of a caregiver as a primary care physician by an insurance company, without acts of negligence on his or her part, would be sufficient to impose vicarious liability on the part of that caregiver and we decline to do so. Under this record, Conard's care of Clements extended through May 1995, and the evidence does not support any other finding.

Clements's next argument is that even if we believe limitations has run, the open courts provision of our state constitution saves her case. That provision provides: "[a]ll courts shall be open, and every person for every injury done him, and his lands, goods, person or reputation shall have remedy by due course of law." Tex. Const. art. I, § 13. This provision has been summarized as giving a constitutional guarantee to persons bringing common law causes of action that they would not unreasonably be denied access to the courts. *See Jennings,* 917 S.W.2d at 793.

■ Thus, the legislature cannot abrogate the right to bring a well-established common law cause of action without a showing that the legislative basis for the statute outweighs the denial of the constitutionally guaranteed right of redress. *Id.* A statute violates the open courts provision if it cuts off an injured person's right to sue before the person has a reasonable opportunity to discover the wrong and bring suit. *Neagle v. Nelson,* 685 S.W.2d 11, 12 (Tex.1985); *DeRuy v. Garza,* 995 S.W.2d 748, 752 (Tex.App.—San Antonio 1999, n.w.h.).

■ Therefore, once a defendant has established that a suit is time barred by article 4590i, the plaintiff must show that as applied to her, the article is unconstitutional because it cut off her cause of action before she knew or could have known that it existed. *Hellman v. Mateo,* 772 S.W.2d 64, 66 (Tex.1989). In a sum-

mary judgment context, when facts setting up an open courts defense have been alleged, the party seeking to rely upon the limitation statute must negate the open courts defense. *Holt v. Epley*, 894 S.W.2d 511, 516 (Tex.App.—Amarillo 1995, writ denied). To establish a right to redress under the open courts provision, a litigant must generally show 1) she has a cognizable common-law cause of action, and 2) restriction of that claim is unreasonable or arbitrary when balanced against the statute's purpose. *Moreno v. Sterling Drug Inc.*, 787 S.W.2d 348, 355 (Tex.1990). Clements acknowledges that application of the provision has been rejected when the evidence shows the plaintiff had an actual subjective awareness of the three elements of her claim, *i.e.*, the injury, its cause, and the identity of the potentially liable party. *See Voegtlin v. Perryman*, 977 S.W.2d 806 (Tex.App.—Fort Worth 1998, no writ); *Holt v. Epley*, 894 S.W.2d at 511.

Relying upon the holding in *Hellman*, Clements points out that evidence a plaintiff was not aware of the causal connection between the doctor's report and her injury was held sufficient to raise a fact question and place the burden of negating the defense on the doctor, and she argues that her deposition testimony that her chemotherapy had left her in such a mental and physical condition that she could not comprehend she might have a medical malpractice claim was sufficient to raise a fact question as to her subjective awareness of her cause of action. In support of that contention, she also relies on *Gatling v. Perna*, 788 S.W.2d 44, 47 (Tex.App.—Dallas 1990, writ denied), in which the court held that it could not fault, as a matter of law, a psychologically disturbed patient for relying upon an opinion expressed by a psychiatrist under whose regular care she had been for four years to the exclusion of a doctor she had only consulted once.

In response, Conard argues that Clements had a reasonable opportunity to discover her claims. In fact, he reasons, she had some 15 months after her diagnosis of cancer within which to file suit. He argues the record demonstrates she was aware of her injury, its cause, and the potentially culpable parties. Thus, under the test suggested and applied by the *Voegtlin* court, her argument fails and she is not entitled to the benefit of the open courts doctrine. We agree with, and adopt, that analysis.

With regard to Clements's argument that her mental or physical incapacity was sufficient to toll limitations, Conard argues there is no competent summary judgment evidence to support such a claim. Supporting that argument, he emphasizes the summary judgment evidence that instead of seeking the services of a psychiatrist or psychologist for her mental problems, as was the case in the *Gatling* decision upon which she relies, she admits she was able to conduct such activities as "raising a family and holding a job and having a husband and keeping [her] family going" during the 15–month period. She was also able to start her own company during this period. To buttress this reasoning, Conard again relies upon the *Voegtlin* decision, which he contends held that evidence similar to the above was not sufficient to raise a fact issue with respect to the open courts provision.

Conard's rather strong reliance upon the *Voegtlin* decision warrants a discussion of that case. In that case, the plaintiff also had breast cancer and sued her physician for failing to order a biopsy sooner. Faced with a limitations defense, she argues a tolling theory. In support, she points to her testimony that "she 'did not really think about' the fact that they might have [a] potential claim against [the physician]" until after her chemotherapy was completed. The court concluded that this testimony was not sufficient to toll limitations and, because the plaintiffs "had opportunity to wrongly or negligently fail to recognize" the basis of a suit, at a time beyond the two-year period, her suit was not maintainable. *Voegtlin*, 977 S.W.2d at 811.

We agree with the reasoning of the *Voegtlin* court and, because the facts before that court and ours are sufficiently analogous, we apply that reasoning here. The trial court did not err in its evident conclusion that the open courts doctrine was not applicable here. Clements's first point is overruled insofar as the Conard summary judgment is concerned.

## APPLICABILITY OF LIMITATIONS AS TO LCFP

To prevail on a medical negligence cause of action, a plaintiff must prove 1) a duty by the physician/nurse/hospital to act according to applicable standards of care; 2) a breach of the applicable standard of care; 3) an injury; and 4) a causal connection between the breach of care and the injury. *Mills v. Angel,* 995 S.W.2d 262, 267 (Tex.App.—Texarkana 1999, n.w.h.). However, the Clements did not advance any of these claims against LCFP in their live pleading at the time of the summary judgment. Rather, although they alleged 15 separate allegations of medical negligence, all were related to the diagnosis and/or treatment of Clements. LCFP correctly points out that under the Texas Medical Practices Act (TMPA),[4] it cannot practice medicine. *See* §§ 3.07 and 3.08.

In section 1.03(a)(12) of the TMPA, "practicing medicine" is defined as follows:

A person shall be considered to be practicing medicine within this Act:

(A) who shall publicly profess to be a physician or surgeon and shall diagnose, treat, or offer to treat any disease or disorder, mental or physical, or any physical deformity or injury by any system or method or to effect cures thereof; or

(B) who shall diagnose, treat, or offer to treat any disease or disorder, mental or physical, or any physical deformity or injury by any system or method and to effect cures thereof and charge therefor, directly or indirectly, money or other compensation.

Tex.Rev.Civ. Stat. Ann. art. 4495b, 1 1.03(a)(12) (Vernon Supp.1999). Section 1.03(a)(11)(a)(11) of the TMPA does not include professional associations or other legal entities in its definition of physicians and surgeons. *See id.* at § 1.03(a)(11).

The TMPA requires that a person who practices medicine must be licensed to do so. *See* § 3.07(a). Section 3.04(a) of the TMPA lists the qualifications required for a license applicant. Those qualifications include, *inter alia*, such requirements as being at least 21 years of age, having good professional character, having completed 60 semester hours of college courses other than medical school, and being a graduate of an acceptable medical school. These are of such a nature as to clearly demonstrate that the TMPA contemplates that only individual persons may apply for, and obtain, medical licenses.

Indeed, in section 3.08(15), the TMPA provides that a person can be denied a license if he or she aids or abets the practice of medicine by a partnership, association or corporation that is not licensed. *See generally Williams v. Good Health Plus, Inc.,* 743 S.W.2d 373 (Tex. App.—San Antonio 1987, no writ) (HMO statutorily barred from practice of medicine); *Woodson v. Scott & White Hospital,* 186 S.W.2d 720 (Tex.Civ.App.—Austin 1945, writ ref'd n.r.e.) (for profit corporation cannot practice medicine). We agree with LCFP that *MacGregor Medical Association v. Campbell,* 985 S.W.2d 38 (Tex. 1998) does not stand for the proposition that a professional association can practice

---

4. Later references to the TMPA are to the various sections of that Act as contained in Tex.Rev.Civ. Stat. Ann. art. 4495b, §§ 1.01–6.13 (Vernon Supp.1999). However, we recognize that article 4495b has been recodified as Subtitle B of the Occupations Code, §§ 151.001 to 165.160 which became effective September 1, 1999, after the filing of this case and the subsequent summary judgment was granted, and there were no material changes relevant to our discussion. *See* Tex. Occup. Code Ann. (Vernon Pamph.2000).

medicine. The court noted the protections of the statute extended to physicians who practice but not to those same physicians who might practice as a group, and those protections would not be consistent with the objectives of the act. Thus, the court held that physicians practicing as an association were entitled to the same protections as those to which they would be entitled to as an individual practitioner. *Id.* at 39. Parenthetically, the negligence allegations in *MacGregor* all concerned alleged negligence on the part of its agents or employees. *See id.*

 Because it could not be directly liable, the only way that LCFP could have been held liable would be vicarious liability for negligence on the part of its agents, servants, or employees. At the time of the summary judgment, the only co-defendant left in the case was Conard. Therefore, LCFP's vicarious liability would have had to have been based upon acts of negligence of Conard. As we have discussed above, recovery for any of those acts was barred by the statute of limitations. Thus, the trial court did not err in rendering its summary judgment in favor of LCFP.

Because the trial court did not err in rendering either of its summary judgments, Clements's first issue does not present reversible error and is overruled.

### SPOLIATION

 In her second issue, Clements complains that "the trial court abused its discretion in refusing to give plaintiffs the benefit of the [spoliation] doctrine," which is sufficient to defeat summary judgment. The doctrine of spoliation refers to the improper intentional destruction of evidence relevant to a case. *Malone v. Foster*, 956 S.W.2d 573, 577 (Tex.App.—Dallas 1997), *aff'd*, 977 S.W.2d 562 (Tex.1998). Its intent is to prevent the subversion of the discovery process and the fair administration of justice by destroying evidence

before a claim is actually filed. *Trevino v. Ortega*, 969 S.W.2d 950, 955 (Tex.1998). Thus, if a party violates a statutory, regulatory, or ethical duty to preserve evidence, within the broad discretion of the trial court, it may take measures ranging from an application of the spoliation presumption[5] to, in the most extreme cases, death penalty sanctions. *Id.* at 955 and 959.

 As a basis for her claim of spoliation, Clements emphasizes her testimony that she gave Conard a two-page written medical history which was never produced and that based upon the number of canceled checks she had, she visited Conard a total of 19 times. This number of visits, of course, would be in sharp contrast to Conard's production of records showing only five visits. In the face of a spoliation complaint, the threshold issue is whether the alleged spoliator was under any obligation to preserve evidence. *Trevino*, 969 S.W.2d at 955. A party could have a statutory, regulatory or ethical duty to preserve evidence. *Id.* Part of the duty inquiry involves determining the point at which the duty arises. And, while there is no question that a duty arises once litigation has arose, courts have been less clear as to whether a duty exists prior to litigation. In this case, the only evidence of spoliation is an inference from Clements's testimony that the records were not produced. In that connection, the canceled checks to which she referred apparently were never produced or received into evidence as they do not appear in the summary judgment record. Additionally, the record shows that during his testimony, Conard referred to medical records which were handed to Clements's counsel for examination. The record does not show that counsel ever questioned Conard about any missing records. Nothing in the record indicates any objection or comment by

---

**5.** The destroyed evidence would have been detrimental to the spoliator's cause. *Trevino,*

969 S.W.2d at 952.

counsel that the records were incomplete or not in accordance with his client's contention. Suffice it to say, under this record, the trial court did not abuse its discretion in concluding that Clements was not entitled to the benefit of a spoliation presumption. Clements's second issue is overruled.

In sum, both of Clements's issues are overruled and the judgments of the trial court are affirmed.