**LABORATORY CORPORATION OF AMERICA, Appellant,**

v.

**Lorie COMPTON, Appellee.**

No. 04–02–00629–CV.

Court of Appeals of Texas, San Antonio.

Sept. 24, 2003.

Rehearing Overruled Jan. 6, 2004.

Marie R. Yeates, Ara A. Hardig, Gwen Samora, Jennifer H. Davidow, Richard P. Dearing, Vinson & Elkins L.L.P., D. Faye Caldwell, E. Lindsey Everson, Howard L. Steele, Jr., Caldwell & Clinton P.L.L.C., Houston, for appellant.

Gerald T. Drought, Denise Nixon Bunk, Paul A. Fleck, Martin, Drought & Torres, Inc., San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by ALMA L. LÓPEZ, Chief Justice.

This appeal is from a judgment against Laboratory Corporation of America ("LabCorp") in the second trial of a claim by Lorie Compton ("Compton") arising from the misdiagnosis of a biopsy. LabCorp raises numerous issues on appeal. Because the limitations issue is dispositive of the appeal, we only address whether Compton's claim is barred by limitations and whether the trial judge from the first trial erred in sanctioning LabCorp. *See* Tex.R.App. P. 47.1 (opinion should only address issues raised and necessary to final disposition of appeal). We reverse the trial court's judgment and render judgment that Compton take nothing. We also reverse the trial court's sanctions order.

### BACKGROUND

In May of 1997, Dr. Marco Lopez discovered a lesion on Compton's cervix that was visible to the naked eye. Lopez took a biopsy of the lesion and sent it to LabCorp. Dr. Suzanne Kreisberg, who worked for LabCorp, reported the biopsy as being normal.

In July of 1998, Dr. Lopez again noticed the lesion and that the lesion was larger than the year before. Dr. Lopez performed another biopsy and sent it to LabCorp. Dr. Kreisberg evaluated the biopsy and diagnosed Compton as having adenocarcinoma of the cervix. Dr. Kreisberg subsequently admitted that she had misdiagnosed the May 1997 biopsy.

Dr. Lopez referred Compton to Dr. Allan White, a gynecologic oncologist, who performed a radical hysterectomy. Compton was 24 years old at the time of the surgery.

On January 26, 2000, Compton sued LabCorp contending that the delay in her diagnosis required her to have a radical hysterectomy rather than a cervical cone biopsy, which would have preserved her fertility. LabCorp's motion for summary judgment based on limitations and LabCorp's pre-trial motion to exclude the testimony of Dr. Bruce Halbridge as an expert were denied.

The jury found that Dr. Kreisberg's negligence in evaluating the 1997 biopsy

for LabCorp was a proximate cause of damages to Compton and that Dr. Kreisberg was acting as an employee of LabCorp when she evaluated the 1997 biopsy.[2] The jury further found that Compton should have discovered that the 1997 biopsy was negligently evaluated on July 21, 1998. The trial court entered a judgment based on the jury's verdict awarding Compton $2,376,000.00 in damages and $569,589.04 in pre-judgment interest. LabCorp timely appealed.

## LIMITATIONS

■ In its first issue, LabCorp contends that Compton's claim was barred by limitations under the two year period applicable to health care liability claims contained in section 10.01 of the Medical Liability and Insurance Improvement Act ("MLIIA"). Compton responds that the two year period contained in section 10.01 of the MLIIA is not applicable because her claim does not meet the definition of a "health care liability claim."

Section 10.01 of the MLIIA provides: "no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort." TEX.REV.CIV. STAT. ANN. art. 4590i, § 10.01 (Vernon Supp.2003). "Health care liability claim" is defined as "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety." TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.03(a)(4) (Vernon Supp. 2003). "Health care provider" is defined as "any person, partnership, professional association, corporation, facility, or institution duly licensed or chartered by the State of Texas to provide health care as a registered nurse, hospital, dentist, podia-

trist, pharmacist, or nursing home, or an officer, employee, or agent thereof acting in the course and scope of his employment." TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.03(a)(3) (Vernon Supp.2003).

■ The definition of "health care provider" "specifically delineates entities that are health care providers, including hospitals and nursing homes." *Townsend v. Catalina Ambulance Co., Inc.,* 857 S.W.2d 791, 796 (Tex.App.-Corpus Christi 1993, no writ). "Under the rules of statutory construction, the express mention of one person, thing, consequence or class is tantamount to the express exclusion of all others." *Lenhard v. Butler,* 745 S.W.2d 101, 105 (Tex.App.-Fort Worth 1988, writ denied); *see also Terry v. Barrinuevo,* 961 S.W.2d 528, 530 (Tex.App.-Houston [1st Dist.] 1997, no pet.); *Townsend,* 857 S.W.2d at 796. Applying this rule, several courts have held that the MLIIA does not include certain individuals or entities offering health-related services because section 1.03(a)(3) does not mention them. *See Ponce v. El Paso Healthcare System, Ltd.,* 55 S.W.3d 34, 37 (Tex.App.-El Paso 2001, pet. denied) (excluding occupational therapists); *Finley v. Steenkamp,* 19 S.W.3d 533, 541–42 (Tex.App.-Fort Worth 2000, no pet.) (excluding dialysis center); *Terry,* 961 S.W.2d at 531 (excluding physical therapists); *Townsend,* 857 S.W.2d at 796 (excluding ambulance company); *Lenhard,* 745 S.W.2d at 104 (excluding psychologists). Because a laboratory is not specifically listed in section 1.03(a)(3), it is not considered to be a "health care provider." LabCorp conceded this issue in its reply brief, stating, "LabCorp has never claimed to qualify as a physician or a health care provider under the MLIIA."

---

**2.** We note that the case was not submitted to the jury under a direct liability or ostensible agency theory but only under a vicarious liability theory.

LabCorp further conceded this issue during oral argument before this court.

Although LabCorp concedes that it is not considered a "health care provider" as defined by the MLIIA, LabCorp contends that it is entitled to assert the same limitations defense that Dr. Kreisberg is entitled to assert because the jury found that Dr. Kreisberg was LabCorp's employee. Compton responds that LabCorp owed a direct, nondelegable duty to properly diagnose her and that LabCorp "cannot shirk that duty by hiding behind Dr. Kreisberg."

Compton relies on *Byrd v. Skyline Equipment Co.*, 792 S.W.2d 195 (Tex.App.-Austin 1990), *writ denied*, 808 S.W.2d 463 (Tex.1991), to support her contention that LabCorp owed her a nondelegable duty. In *Byrd*, Byrd, who was injured while using a hotel's washing machine, sued Skyline on the theory that Skyline negligently failed to ground the machine. 792 S.W.2d at 196. Skyline moved for summary judgment on the ground that it had not installed the washing machine and that the machine had been maintained by Frank Muniz, an independent contractor, not by Skyline. *Id.* Although the Austin court discussed whether Skyline could immunize itself from liability by engaging the services of an independent contractor, the court did not hold that any entity that engages the services of an independent contractor owes a nondelegable duty to third parties with regard to the services performed. Instead, the court relied on section 429 of the Restatement (Second) of Torts to impose liability on Skyline "if the hotel [where the machine was located] reasonably believed that Skyline was servicing the washing machine by its servants, even if Muniz was not a servant but an independent contractor with Skyline." *Id.* at 197. Section 429 provides:

> One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.

*Id.* (quoting Restatement (Second) of Torts § 429, at 421 (1965)).

Compton's reliance on *Byrd* ignores the manner in which the cause was submitted to the jury and the grounds upon which LabCorp was found to be liable. The jury found that Dr. Kreisberg was negligent and that she was an *employee* of LabCorp, not an independent contractor. Furthermore, the Texas Supreme Court issued a per curiam opinion in denying the writ in *Byrd*, stating that it neither approved nor disapproved any language in the opinion unnecessary to holding that a fact issue was raised as to whether Muniz was an employee or an agent. 808 S.W.2d at 463. Finally, in *Baptist Memorial Hosp. System v. Sampson*, 969 S.W.2d 945, 949 (Tex. 1998), the Texas Supreme Court expressly declined to adopt section 429 of the Restatement (Second) of Torts as a standard for establishing liability for an independent contractor's actions.

LabCorp relies on *Clements v. Conard*, 21 S.W.3d 514 (Tex.App.-Amarillo 2000, pet. denied), to support its contention that it is entitled to assert the same limitations defense that Dr. Kreisberg is entitled to assert because LabCorp is being held vicariously liable for Dr. Kreisberg's actions. *Clements* supports LabCorp's contention. In *Clements*, a medial malpractice lawsuit was brought against Scott Conard, M.D. and Las Colinas Family Practice, P.A. 21 S.W.3d at 517. The court initially analyzed whether the claims against Conard individually were barred by the limitations

period contained in section 10.01 of the MLIIA. *Id.* at 518–22. The court concluded that the claims against Conard were barred. *Id.* The court then noted that because LCFP was a professional association, it could not be licensed to practice medicine; therefore, LCFP could not be directly liable for the malpractice. *Id.* at 522. The court then reasoned:

> Because it could not be directly liable, the only way that LCFP could have been held liable would be vicarious liability for negligence on the part of its agents, servants, or employees. At the time of the summary judgment, the only co-defendant left in the case was Conard. Therefore, LCFP's vicarious liability would have had to have been based upon acts of negligence of Conard. As we have discussed above, recovery for any of those acts was barred by the statute of limitations. Thus, the trial court did not err in rendering its summary judgment in favor of LCFP.

*Id.* at 523.

The holding in *Clements* is consistent with the general rule that an employer is entitled to assert any affirmative defenses its employee has to liability. *See DeWitt v. Harris County,* 904 S.W.2d 650, 654 (Tex.1995); *Harris County v. Louvier,* 956 S.W.2d 106, 110 n. 8 (Tex.App.-Houston [14th Dist.] 1997, no pet.); *Cameron Compress Co. v. Kubecka,* 283 S.W. 285, 287 (Tex.Civ.App.-Austin 1926, writ ref'd) (respondeat superior "declares the act of the servant to be the act of the master, and that which excuses or justifies the one will in like manner excuse and justify the other"); *cf. Puls v. Columbia Hosp. at Medical City Dallas Subsidiary, L.P.,* 92

S.W.3d 613, 617–18 (Tex.App.-Dallas 2002, pet. denied) (applying limitations in section 10.01 to claims brought against a hospital using a vicarious liability theory). Therefore, we hold that LabCorp was entitled to assert Dr. Kreisburg's limitation defense. Since Compton's claim arose in May of 1997 and she failed to file suit until January of 2000, Compton's claim is barred by limitations.[3]

### SANCTIONS

■ Compton moved for sanctions after the second trial based on the conduct that led the trial court to grant a motion for new trial after the first trial. Specifically, Compton asserted that LabCorp's expert, Dr. Gordon, referred to an article that was not disclosed in discovery and misrepresented the contents of the article. The trial court granted sanctions against LabCorp in the amount of $75,000, based on its finding that Compton had incurred in excess of $75,000 in attorneys' fees and expenses in preparation for the first trial.

LabCorp contends that Compton waived her right to pursue sanctions because she did not file the motion until after the second trial. In *Remington Arms Co. v. Caldwell,* 850 S.W.2d 167, 170 (Tex.1993), the Texas Supreme Court held that a plaintiff can waive a claim for sanctions by delaying in making an objection or moving for sanctions. In this case, Compton was aware of the abuse of the discovery process and the alleged misrepresentation during the course of the first trial, and she was granted a new trial for those reasons. Accordingly, the issue is whether Compton waived her right to pursue sanctions by

---

**3.** We note that Compton did not raise an open-courts challenge to the limitations bar in the trial court; therefore, any open-courts challenge is waived. *Southwestern Elec. Power Co. v. Grant,* 73 S.W.3d 211, 222 (Tex. 2002). We further note that the MLIIA created an absolute two-year limitations period, abolishing the discovery rule in health care liability claims. *See Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985); *Wright v. Fowler,* 991 S.W.2d 343, 350 (Tex.App.-Fort Worth 1999, no pet.).

delaying in filing her motion until after the conclusion of the second trial. We hold that she did. Compton was aware of the grounds on which she requested sanctions at the conclusion of the first trial. The outcome of the second trial does not impact the costs expended and fees paid for that first trial. Because Compton waived her sanctions complaint, we reverse the trial court's order imposing sanctions.[4]

### CONCLUSION

The judgment of the trial court and the court's order dated October 12, 2002, awarding Compton sanctions are reversed, and judgment is rendered that Compton take nothing with regard to her claims against LabCorp.

---

**4.** We also question whether an attorney's statement, unsupported by expert testimony, that a gynecologic oncologist misrepresented a medical reference article would provide a sufficient basis for awarding sanctions. *See, e.g., Elkins v. Stotts-Brown,* 103 S.W.3d 664, 669 (Tex.App.-Dallas 2003, no pet.) (evidence must be admitted to support sanctions award); *Alejandro v. Bell,* 84 S.W.3d 383, 393 (Tex.App.-Corpus Christi 2002, no pet.) (holding evidence supporting assertion of misconduct must be presented at sanctions hearing); *Texas Ohio Gas, Inc. v. Mecom,* 28 S.W.3d 129, 139 (Tex.App.-Texarkana 2000, no pet.) (noting evidence must support imposition of sanction).