PRO PATH SERVICES, L.L.P., Propath Women's Services, Ltd., and Propath Women's Services, L.L.P., Appellants

v.

Rebecca KOCH and Paul Koch, Appellees.

No. 05–05–01083–CV.

Court of Appeals of Texas, Dallas.

April 26, 2006.

Rehearing Overruled June 7, 2006.

Edward P. Quillan and Carol Elaine Davis, Quillan Law Firm, P.C., Dallas, for Appellants.

Ralph D. Houston, The Houston Law Firm, Houston, Elizabeth M. Fraley, Fraley & Fraley, L.L.P., Dallas, Phillip J. Duffy and Mark S. Sidoti, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ, Nichol L. Bunn, Wilson, Elser, Moskowitz, Edelman and Dicker, L.L.P., Dallas, for Appellees.

Before Justices MORRIS, MOSELEY, and FITZGERALD.

## OPINION

Opinion by Justice FITZGERALD.

Pro Path Services, L.L.P., ProPath Women's Services, Ltd., and ProPath Women's Services, L.L.P. bring this interlocutory appeal of the trial court's denial of their motion to dismiss the cause of action of Rebecca Koch and Paul Koch for failing to comply with the expert-report requirements of civil practice and remedies code section 74.351. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 51.014(a)(9) & 74.351(b) (Vernon Supp.2005). We reverse the trial court's order, dismiss appellees' causes of action against appellants with prejudice, and remand the cause to the trial court for determination of appellants' reasonable attorney's fees and costs of court.

## FACTUAL BACKGROUND

Appellants are partnerships that are

wholly owned by individual physicians.[1] On November 12, 2004, appellees filed suit against appellants and other defendants alleging they were negligent in failing to accurately interpret Rebecca Koch's Pap smears, failing to have the smears redone to obtain adequate samples, and in failing to refer Koch for further diagnostic testing and workup. Koch suffered cervical cancer.

The evidence presented to the trial court showed Koch's Pap smears were submitted to appellants for laboratory testing. Krista Crews, appellants' executive director, testified about appellants' operations. Appellants employed "cytotechs" who performed the laboratory work. These cytotechs were not physicians or nurses and were not licensed by the State of Texas. If the results of the testing indicated an abnormality, then an individual physician who was a partner in appellants would examine the results. If the results were "normal," then the laboratory testing would be performed entirely by the cytotechs with no involvement by an individual physician. Whether the testing was performed solely by a cytotech or whether an individual physician was involved was reflected on the report of the testing of the Pap smear. The two reports in the record of Koch's Pap smears show there was no involvement by an individual physician in the testing.

After filing suit, appellees did not file an expert report on the standard of care applicable to appellants, the manner in which appellants failed to meet the standard, and the causal relationship between that failure and the injury, harm, and damages claimed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6) (Vernon Supp.2005). On April 28, 2005, appellants filed a motion to dismiss the causes of action against them because of appellees' failure to file an expert report. The trial court denied the motion.

## EXPERT REPORT REQUIREMENT

Texas Civil Practice & Remedies Code section 74.351 provides that when a plaintiff files a "health care liability claim" against a "physician" or "health care provider," the plaintiff must serve within 120 days an expert report for each "physician" or "health care provider" against whom the "health care liability claim" is asserted. *Id.* § 74.351(a). If the expert report is not timely served, then the trial court, on the motion of the affected physician or health care provider, *shall* dismiss the claim against the physician or health care provider and award the physician or health care provider "reasonable attorney's fees and costs of court incurred by the physician or health care provider." *Id.* § 74.351(b). The sole dispute in this case is whether appellants are physicians or health care providers as defined in the statute.

"Physician" and "Health care provider" are specifically defined in the statute.

"Physician" means:

(A) an individual licensed to practice medicine in this state;

(B) a professional association organized under the Texas Professional Association Act (Article 1528f, Vernon's Texas Civil Statutes) by an individual physician or group of physicians;

(C) a partnership or limited liability partnership formed by a group of physicians;

1. The term "individual physician" is used in this opinion to mean a human person who is licensed to practice medicine as opposed to a business entity that meets the definition of "physician."

(D) a nonprofit health corporation certified under Section 162.001, Occupations Code; or

(E) a company formed by a group of physicians under the Texas Limited Liability Company Act (Article 1528n, Vernon's Texas Civil Statutes).

*Id.* § 74.001(a)(23) (Vernon 2005).

(A) "Health care provider" means any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care, including:

(i) a registered nurse;

(ii) a dentist;

(iii) a podiatrist;

(iv) a pharmacist;

(v) a chiropractor;

(vi) an optometrist; or

(vii) a health care institution.

(B) The term includes:

(i) an officer, director, shareholder, member, partner, manager, owner, or affiliate of a health care provider or physician; and

(ii) an employee, independent contractor, or agent of a health care provider or physician acting in the course and scope of the employment or contractual relationship.

*Id.* § 74.001(a)(12).

Appellants asserted in their motion to dismiss that appellees' cause of action is a health care liability claim. Appellants ar-

gued the expert-report requirements apply to appellees' claims because appellants fall under the definition of "physician" in that they are limited liability partnerships[2] formed and wholly owned by groups of physicians who practice pathology and gynecological pathology. Appellants moved for dismissal because more than 120 days had passed since the filing of the lawsuit and appellees had not filed the required expert report. *See id.* § 74.351(b).

■ Appellees argue that appellants are the laboratories that tested Koch's Pap smears and that laboratories do not fall under the definition of "health care provider." Appellees also argue that to apply the definition of "physician" to a laboratory owned by a group of physicians would be a departure from precedent because, under former article 4590i, individuals or entities that did not fall under the definition of "health care provider" could not be covered by the act by forming a business association. *See, e.g., Lab. Corp. of Am. v. Compton,* 126 S.W.3d 196, 198–99 (Tex. App.-San Antonio 2003, pet. denied). The definition of "health care provider" in former article 4590i contained an exclusive list of individuals and entities that were health care providers, and pathology laboratories were not included in that list. *See* TEX.REV.CIV. STAT. ANN. art. 1.03(a)(3) (repealed 2003).[3]

Appellees argue the current definition of "health care provider" also excludes pathology laboratories by omission. Ap-

---

**2.** Crews stated in her affidavit that ProPath Women's Services, Ltd. was a 100 percent physician-owned medical partnership before it "was converted to and became ProPath Women's Services, L.L.P. as of December 31, 2002."

**3.** Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, 2041, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 205, § 10.09, 2003 Tex. Gen. Laws 847,

884. Under article 4590i, " 'Health care provider' means any person, partnership, professional association, corporation, facility, or institution duly licensed or chartered by the State of Texas to provide health care as a registered nurse, hospital, dentist, podiatrist, pharmacist, or nursing home, or an officer, employee, or agent thereof acting in the course and scope of his employment."

pellees assert that interpreting "physician" in this case to provide the protections of chapter 74 to a pathology laboratory established by physicians conflicts with the legislature's intent that pathology laboratories not be protected as shown by their exclusion by omission from the current definition of "health care provider." Appellees are mistaken that the current definition of "health care provider" is an exclusive list. In defining "health care provider" in section 74.001(a)(12), the legislature used the word "including," which makes the list nonexclusive. *See* TEX. GOV'T CODE ANN. § 311.005(13) (Vernon 2005) (Code Construction Act; " 'Includes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded."). Because the definition of "health care provider" does not exclude pathology laboratories, the legislature has not expressed an intent that pathology laboratories cannot fall within the protections of chapter 74. Thus, the application of the protections of chapter 74 to a pathology laboratory that qualifies as a "physician" does not create a conflict.

■ Appellees also argue that an entity of physicians, such as appellants, ought not be entitled to the protections of chapter 74 unless the entity also qualifies as a health care provider. We disagree. The relevant code provisions distinguish between physicians and health care providers, and they do not require that a physician meet the definition of health care provider to be entitled to the protections of chapter 74. *See, e.g.,* TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(13) (" 'Health care liability claim' means a cause of action against a health care provider or physician...."), (24) (" 'Professional or administrative ser-

vices' means those duties or services that physician or health care provider is required to provide ...."), § 74.051 (notice to be mailed "to each physician or health care provider"), § 74.101 ("In a suit against a physician or health care provider involving a health care liability claim that is based on the failure of the physician or health care provider to disclose ...."), § 74.104 ("the physician or health care provider shall disclose ... the risks and hazards ...."), § 74.401 (qualifications of expert witness in suit against physician), § 74.402 (qualifications of expert witness in suit against health care provider). Likewise, section 74.351 requires a plaintiff bringing a health care liability claim to file expert reports "for each physician or health care provider against whom a liability claim is asserted." *Id.* § 74.351(a). We conclude that a "physician" need not be a "health care provider" to be entitled to the protections of chapter 74.

Appellees argue that not requiring a "physician" to be a "health care provider" under chapter 74 will render the definition of "health care provider" irrelevant because "[a]n individual or entity would merely have to form a business association to have the statute apply to care giving activities outside the definition. This clearly would subvert the legislative plan." We disagree. Not every care-giving individual or association that forms a business association will qualify as a "physician." To meet the definition of "physician," an individual must be licensed to practice medicine, and "physician" entities must consist of individuals licensed to practice medicine. *See id.* § 74.001(a)(23) (definition of "physician").

Appellees also argue that chapter 74 should not protect physicians any time they form a business entity for any purpose. As appellees argue, "A wholly physician owned partnership which owned car

washes could not logically be considered a physician under Chapter 74." In that situation, the issue is not whether the defendant is a "physician" as defined in chapter 74; the issue is whether a health care liability claim is asserted against a physician. If the physician-owned car-wash partnership was not sued for "treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care," then the expert-report requirements and many of the other protections provided by chapter 74 would not apply. *See id.* § 74.001(a)(13) (defining "health care liability claim").[4]

Appellees also argue that appellants ought not be considered "physicians" because the laboratory work on the Pap smears in this case was performed by cytotechs, not physicians. The cytotechs, however, are the employees of physicians acting in the course and scope of their employment and, thus, are within the definition of "health care provider." *See id.* § 74.001(a)(12)(B)(ii).

■ We conclude that appellants are physicians as defined in section 74.001(a)(23) and are entitled to the protections of chapter 74. Aside from the issue of whether appellants are physicians or health care providers, appellees have never disputed that their cause of action against appellants is a health care liability claim. Appellees failed to timely file an expert report regarding appellants as required by section 74.351. Accordingly, we hold the trial court erred in denying appel-

lants' motion to dismiss. *See id.* § 74.351(b).

We reverse the trial court's order denying the motion to dismiss, we render judgment dismissing appellees' claims against appellants with prejudice to the refiling of the claims, and we remand the cause to the trial court for determination of appellants' reasonable attorney's fees and costs of court.

---

4. As defined in chapter 74,
   "Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.
   *Id.* § 74.001(a)(13) (Vernon 2005).