Opinion filed May 7, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed May 7, 2009

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                  ___________

 

                                                          No. 11-08-00271-CV

                                                    __________

 

HOUSE OF YAHWEH, YISRAYL HAWKINS, 

AND SHANDRA HAWKINS, Appellants

 

                                                             V.

 

MICHAEL WAYNE JOHNSON, JR., INDIVIDUALLY; AS NEXT
FRIEND OF ALANNAH JOHNSON AND 

LISA JOHNSON, MINORS; AND AS REPRESENTATIVE OF THE
ESTATE OF LISA JOHNSON, Appellee

 



 

                                         On
Appeal from the 259th District Court

 

                                                          Jones
County, Texas

 

                                                   Trial
Court Cause No. 21,576

 



 

                                                                   O
P I N I O N








In
this interlocutory appeal, appellants House of Yahweh, Yisrayl Hawkins, and
Shandra Hawkins challenge the trial court=s
order denying their motion to dismiss that was filed pursuant to Section
74.351(b) of the Texas Medical Liability Act.  See Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(9) (Vernon
2008) (permitting interlocutory appeals) and Tex.
Civ. Prac. & Rem. Code Ann. ch. 74 (Vernon 2005 & Supp. 2008) 
(Texas Medical Liability Act).  Because the trial court abused its discretion
in denying appellants=
motion for continuance of the hearing on their motion to dismiss, we reverse
the trial court=s
order, and we remand for further proceedings consistent with this opinion.

                                                                    Introduction

Appellee,
Michael Wayne Johnson, individually; as next friend of Alannah Johnson and Lisa
Johnson, minors; and as representative of the estate of Lisa Johnson, brought
this wrongful death and survival action against appellants, House of Yahweh,
Yisrayl Hawkins, and Shandra Hawkins, and two other defendants, Sherry Hawkins
and Melody Boyd.  Appellants contend that this cause is a Ahealth care liability claim@ that is governed by the
Texas Medical Liability Act.  They also contend that the trial court abused its
discretion in denying their motion to dismiss because appellee failed to comply
with the expert report requirements set forth in Section 74.351. Appellee
contends that appellants had the burden to establish that they were Ahealth care providers@ as defined in the Medical
Liability Act; that appellants failed to meet their burden; and that,
therefore, the trial court did not abuse its discretion in denying appellants= motion to dismiss.

                                                              Factual
Background








Lisa
Johnson died on August 13, 2006, after developing complications during the
birth of her child, also named Lisa.  On February 15, 2008, appellee filed this
suit.  He made the following allegations, among others, in his original
petition:  that Lisa Johnson had been a religious member of House of Yahweh;
that Yisrayl Hawkins was the founder, leader, and instructor of House of Yahweh
and its guidelines and rules; that, pursuant to the teachings and beliefs of
House of Yahweh, its members must use the services of midwives, who are also
members of House of Yahweh, in connection with childbirths; that, on or about
August 13, 2006, Lisa Johnson went into labor and sought treatment from
defendants; that Shandra Hawkins, who was House of Yahweh=s lead midwife, and Sherry
Hawkins and Melody Boyd, who were also midwives, treated Lisa Johnson; that,
immediately after giving birth, Lisa Johnson began to experience medical
complications and severe bleeding; that defendants refused to provide Lisa
Johnson with further treatment and prevented the use of any outside medical
treatment; that defendants deviated from the applicable standard of care in the
care and treatment of Lisa Johnson; and that Lisa Johnson died as a result of
the defendants=
negligence and gross negligence.

Appellee
also alleged that A[d]efendants= techniques, procedures and
medical judgment fell below the standard of care owed by [d]efendants and to be
expected by their patients, including [Lisa Johnson].@  He alleged that House of Yahweh Afailed to use the standard
of care that a reasonably prudent medical provider would have under the same or
similar circumstances@
and Adeviated from the
applicable standard of care by failing to institute a policy which would have
prevented the negligent conduct alleged herein and by prohibiting and
preventing the intervention of outside, lifesaving medical treatment.@  He also alleged that
Yisrayl Hawkins undertook a duty Ato
ensure that the medical services available and which [House of Yahweh=s] members were required to
use did not deviate from the acceptable standard of care.@  He further alleged that
Shandra Hawkins, Sherry Hawkins, and Melody Boyd Afailed
to use the standard of care that a reasonably prudent midwife would have [used]
under the same or similar circumstances@
and that their actions Adeviated
from the acceptable standard of care of medical professionals under the same or
similar circumstances.@


On
June 16, 2008, appellee filed the expert report of Charles Anderson, M.D.  In
the report, Dr. Anderson stated that he had been board certified in Obstetrics
and Gynecology since 1987.  Dr. Anderson also made the following
statements, among others, in his report:  (1) that the standard of care had
been breached in this case; (2) that A[t]he
midwife delivering this baby did not deliver the placenta, which allowed the
uterus to continue to bleed resulting in massive blood loss and death of this
patient@; (3) that A[i]t is common practice to
deliver the placenta manually, if it does not deliver spontaneously@; (4) that, A[o]n autopsy, the placenta
was still present with the umbilical cord in the uterus@; (5) that A[i]t
was partially separated, leading to massive blood loss and death of Lisa
Johnson@; (6) that A[t]he medical care
providers . . . fell far below the standard of care by not removing the
placenta@; (7) that A[t]he medical providers
failed to deliver the placenta and failed to treat the resulting uterine atony
and blood loss[, which] directly led to the death of Lisa Johnson@; and (8) that A[t]he placenta should have
been manually removed and patient transported to a hospital.@








On
July 11, 2008, appellants filed their motion to dismiss.  In the motion,
appellants contended that A[t]his
is a health care liability claim@
governed by Chapter 74.  Appellants also contended that Dr. Anderson=s report failed to comply
with the requirements of Section 74.351 and did not constitute a good faith
effort to comply with the requirements.  Therefore, appellants moved the trial
court to dismiss appellee=s
claims against them.

The
trial court scheduled appellants=
motion to dismiss for hearing on September 12, 2008.  On the morning of the
hearing, appellee filed his first amended original petition and a response to
appellants= motion to
dismiss.  Unlike the allegations in his original petition, appellee did not use
phrases such as Amedical
judgment,@ Apatients,@ Areasonably prudent medical provider,@ Amedical services,@ and Amedical
professionals@ in the
allegations in his amended petition.  For example, appellee alleged in his
original petition that House of Yahweh Afailed
to use the standard of care that a reasonably prudent medical provider would
have [used] under the same or similar circumstances.@ However, in his amended petition, he alleged
that House of Yahweh Afailed
to use the standard of care that a reasonably prudent entity would have under
the same or similar circumstances.@ 
Appellee contended in his response to appellants=
motion to dismiss that this suit is not a health care liability claim.  He also
contended that, in order for appellants to establish that Chapter 74 applied to
his claims against them, they had the burden to bring forth evidence
establishing that they met the statutory definition of Aphysician,@
Ahealth care provider,@ or Ahealth care institution.@

The
trial court proceeded with the hearing on September 12, 2008.  The following
exchange took place at the beginning of the hearing:

[APPELLANTS= COUNSEL]: Thank you, Your
Honor.  The first comment I would like to make is just simply that just this
morning before this hearing started about 20 or 30 minutes ago, I received
Plaintiff=s First
Amended Original Petition as well as Plaintiff=s
response to our objections and motion to dismiss, and, quite honestly, I=m a little frustrated by
the fact that I=m just
receiving this today being that this hearing was set over two months ago and we
filed our brief and motion on July 11th.

 

THE
COURT: Hold on.

 

Did
you provide a copy to the Court, [Appellee=s
Counsel]?

 

[APPELLEE=S COUNSEL]: Your Honor, I
have not.  But I do have an extra for the Court if you=d like it, Your Honor.

 

THE
COURT: All right.  Did you file that with the clerk this morning?








[APPELLEE=S COUNSEL]: I did, Your
Honor, and they=re
both file stamped at 8:40 this morning.   

                                     

Appellee=s
counsel provided the trial court a copy of appellee=s response to the motion to dismiss, and then
the following exchange took place:

[APPELLANTS= COUNSEL]: Thank you.  Your
Honor, after having a chance to briefly review their amended petition it does
somewhat impact and affect my arguments today.  They have changed the language
in their petition I believe as a result of my brief, and my initial inclination
is to request that we have a continuance of this hearing so that I have an
opportunity to respond and draft an additional brief B an amended brief in response to the amended B amendments they have made
to their petition.

 

THE COURT:
Specifically what about the new language is going to prevent you from being
able to argue today?

 

[APPELLANTS= COUNSEL]: They have
changed language and removed language related to words such as Amedical professionals[,]@ Ahealth care[,]@
Amedical provider@ Areasonably prudent medical standard.@ 

 

THE COURT: And
how does that affect your argument on your motion to dismiss?

 

[APPELLANTS= COUNSEL]: Well, part of my
argument, Your Honor, is that, which I thought was evident based on their
pleadings, that is a medical liability claim, which is governed by Chapter 74
or the Texas Civil Practice and Remedies Code.  However, after having a moment
this morning to briefly review their response to my motion, it seems to be that
their primary argument is that this is not a medical liability claim and that
they have thus amended their petition in order to fit into B better fit into what they
believe would be a nonhealth care liability claim.

 

[APPELLEE=S COUNSEL]: May I respond
to that, Your Honor?

 

THE COURT: Yes.

 








[APPELLEE=S COUNSEL]: Your Honor, it=s well established in the
case law particularly the progeny cases that followed Diversicare versus Rubio[1]
talking about pleadings don=t
matter.  It=s a matter
that=s based on
facts.  The facts of the underlying case.  The reality of what=s going on here is that
they=re not ready
today.  I=ve cited for
the case B the Court
in Tab No. 5 B Brown
versus Villegas.[2]  It talks
about their burden in coming forth with some evidence today that they are
health care providers.  They asked me for a copy of that case before this
hearing got started.  I provided them a copy.  I assume they are in agreement
with that copy that they don=t
have any evidence of care health providers to provide to the Court today and
now they=re requesting
a continuance.  That=s
the true motives behind this.  I=m
ready to proceed, Your Honor.  And I would respectfully request that the Court
deny their request for a continuance of this matter.

 

[APPELLANTS= COUNSEL]: Your Honor, I
guess my only response would be, if pleadings don=t
matter I don=t quite
understand why they amended their petition to alter the language.

  

THE COURT: All
right.  Give me one second please.

 

(Brief pause.)

 

THE COURT: All
right.  The oral motion for continuance is denied, and we will proceed forward
on the motion as it is presented to the Court.  

                  


Following
arguments from counsel, the trial court denied appellants= motion to dismiss.  On
October 14, 2008, the trial court entered a written order denying the motion. 
The trial court made the following findings in its order:

(1) The
Defendant=s oral
Motion for Continuance made by House of Yahweh, Yisrayl Hawkins and Shandra
Hawkins after the Court called this matter for hearing is DENIED.

 

(2) The record
in this case contains no evidence that House of Yahweh, Yisrayl Hawkins or
Shandra Hawkins are Aduly
licensed, certified, registered or chartered by the State of Texas to provide
health care.@ Without
such evidence, the Court cannot determine whether House of Yahweh, Yisrayl
Hawkins or Shandra Hawkins are health care providers so as to determine that
Tex. Civ. Prac. & Rem. Code Chapter 74 applies to Plaintiff=s claims against them.

 








(3) While the
record in this matter does not contain such evidence, if House of Yahweh,
Yisrayl Hawkins or Shandra Hawkins were health care providers, the Court finds
that the report of Charles Anderson, M.D. served by Plaintiff upon Defendants
118 days after Plaintiff=s
Original Petition was filed, represents an objective good faith effort to
comply with the definition of Aexpert
report@ as defined by
Tex. Civ. Prac. & Rem. Code '
74.351(r)(6).

 

(4) If any
appellate court reviewing this matter determines for whatever reason that the
report of Charles Anderson, M.D. does not represent an objective good faith
effort to comply with the definition of Aexpert
report@ as defined by
Tex. Civ. Prac. & Rem. Code '
74.351(r)(6), this Court grants Plaintiff=s
alternative request under Tex. Civ. Prac. & Rem. Code ' 74.351(c), for a thirty
(30) day extension to cure any deficiency.

             

                                                     Issues
on Appeal

Appellants
present four issues for review.  In their first issue, they contend that the
trial court erred in concluding that there was no evidence that they were
health care providers because appellee=s
allegations in his pleadings constituted judicial admissions of their status as
health care providers.  In their second issue, they contend that the trial
court erred in concluding that appellee was not required to file an expert
report with respect to his claims against House of Yahweh and Yisrayl Hawkins
because appellee sought to hold them vicariously liable for the alleged
negligent conduct of the midwives, who were health care providers.  In their
third issue, they assert that the trial court erred in denying their motion to
dismiss because Dr. Anderson=s
report failed to comply with the requirements for an expert report.  In their
fourth issue, they assert that the trial court erred in denying their motion
for continuance. 

                                           Health Care Liability
Claims

Chapter 74 of the Texas Civil Practice and Remedies Code
governs health care liability claims.  Chapter 74 defines a health care
liability claim as follows:

AHealth care liability claim@ means a cause of action
against a health care provider or physician for treatment, lack of treatment,
or other claimed departure from accepted standards of medical care, or health
care, or safety or professional or administrative services directly related to
health care, which proximately results in injury to or death of a claimant,
whether the claimant=s
claim or cause of action sounds in tort or contract.                                      

 








Section
74.001(a)(13).  A Ahealth
care provider@ is Aany person, partnership,
professional association, corporation, facility, or institution duly licensed,
certified, registered, or chartered by the State of Texas to provide health
care, including:  (i) a registered nurse; (ii) a dentist; (iii) a podiatrist;
(iv) a pharmacist; (v) a chiropractor; (vi) an optometrist; or (vii) a health
care institution.@ 
Section 74.001(a)(12)(A); see also Section 74.001(a)(11)
(definition of Ahealth
care institution@). 
The use of the word Aincluding@ makes the provider list in
Section 74.001(a)(12)(A) nonexclusive; the word Aincluding@ is a term of enlargement
and not of limitation or exclusive enumeration.  Christus Health v. Beal,
240 S.W.3d 282, 286 (Tex. App.CHouston
[1st Dist.] 2007, no pet.); Pro Path Servs., L.L.P. v. Koch, 192 S.W.3d
667, 671 (Tex. App.CDallas
2006, pet. denied); see Tex. Gov=t Code Ann. ' 311.005(13) (Vernon 2005).  In addition, the
term Ahealth care
provider@ also
includes:  A(i) an
officer, director, shareholder, member, partner, manager, owner, or affiliate
of a health care provider or physician; and (ii) an employee, independent
contractor, or agent of a health care provider or physician acting in the
course and scope of the employment or contractual relationship.@ Section 74.001(a)(12)(B). 
AHealth care@ is Aany act or treatment performed or furnished,
or that should have been performed or furnished, by any health care provider
for, to, or on behalf of a patient during the patient=s medical care, treatment, or confinement.@ 
Section 74.001(a)(10).

Title
3 of the Texas Occupations Code contains provisions applying to health
professions.  See Tex. Occ. Code
Ann. ''
101.001-112.051 (Vernon 2004 & Supp. 2008).  Subtitle C of Title 3 is
entitled AOther
Professions Performing Medical Procedures.@ 
Chapter 203 of subtitle C regulates midwives, and it is entitled the ATexas Midwifery Act.@  Tex. Occ. Code Ann. '' 203.001-.505
(Vernon 2004 & Supp. 2008).  The Midwifery Act defines a Amidwife@ as Aa person who practices midwifery and has met
the licensing requirements established by this chapter and midwifery board
rules.@  Section
203.002(6).  AMidwifery@ is Athe practice of: (A) providing the necessary
supervision, care, and advice to a woman during normal pregnancy, labor, and
the postpartum period; (B) conducting a normal delivery of a child; and (C)
providing normal newborn care.@ 
Section 203.002(7).  The Act defines Anormal@ as Acircumstances under which a midwife has
determined that a client is at a low risk of developing complications.@  Section 203.002(9).  AA person may not practice
midwifery unless the person holds a license issued under this chapter.@ Section 203.251.








Under
Section 74.001(a)(12)(A), the term Ahealth
care provider@
includes Aany
person...duly licensed, certified, registered, or chartered by the State of
Texas to provide health care.@ 
The State of Texas recognizes Amidwifery@ as a health profession. 
Based on the above definition of Amidwifery,@ midwives perform and
furnish Ahealth care@ as that term is defined in
Chapter 74 of the Civil Practice and Remedies Code.  Therefore, if a person
performing midwifery is Aduly
licensed@ as a
midwife, the person would fall within the definition of Ahealth care provider@ in Chapter 74, and Chapter 74 would govern a
claimant=s claims
against the person.

                                        Trial
Court=s
Denial of Motion for Continuance

We
review a trial court=s
denial of a motion for continuance under an abuse of discretion standard.  BMC
Software, Belgium, N.V. v. Marchand, 83 S.W.3d 789, 800 (Tex. 2002).  A
trial court abuses its discretion when it acts in an arbitrary and unreasonable
manner.  Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42
(Tex. 1985).

The
trial court stated that it could not determine whether appellants were health
care providers because there was no evidence that they were Aduly licensed, certified,
registered or chartered by the State of Texas to provide health care.@  In their first issue,
appellants contend that appellee=s
allegations constituted judicial admissions of their status as health care
providers.  A judicial admission must be a clear, deliberate, and unequivocal
statement. Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 905
(Tex. 2000).  A judicial admission occurs when an assertion of fact is
conclusively established in live pleadings.  Id.  

In
many health care liability cases, a party=s
status as a health care provider can be determined from the plaintiff=s allegations.  Chapter 74
provides that a party asserting a health care liability claim must give written
notice of the claim Ato
each physician or health care provider against whom such claim is being made at
least 60 days before the filing of a suit@
and must plead that he or she complied with the notice requirement.  Section
74.051.  A plaintiff=s 
pleadings that he or she has complied with the notice requirement of Chapter 74
or that a defendant is a health care provider may constitute a judicial
admission that the opposing party is a health care provider.  See Auld,
34 S.W.3d at 904-05.  








In
this case, appellee did not provide written notice of his claims to appellants
or the other defendants before filing suit, and appellee did not allege that he
had complied with the notice provision in Chapter 74.  Appellee also did not
allege that he was asserting a Ahealth
care liability claim@
against appellants or that appellants were Ahealth
care providers.@  In
the absence of such allegations, appellee=s
allegations do not contain clear, deliberate, and unequivocal statements of appellants= status as health care
providers and, therefore, do not constitute judicial admissions of that
status.  Auld, 34 S.W.3d at 905.  We overrule appellants= first issue.  

Although
appellee=s allegations
did not rise to the level of judicial admissions of appellants= status as health care
providers, appellee alleged claims in the nature of health care liability
claims against appellants.  Appellee=s
primary allegations relate to alleged care and treatment, and lack thereof
provided by the midwives to Lisa Johnson.  The midwives= care and treatment of Lisa Johnson fell
within the definition of Ahealth
care@ under Chapter
74.  In his original petition, appellee alleged that House of Yahweh failed to
comply with the standard of care owed by a Areasonably
prudent medical provider@
and that A[d]efendants= techniques, procedures and
medical judgment fell below the standard of care.@ 
Based on appellee=s
allegations in his original petition and the fact that appellee filed Dr.
Anderson=s expert
report, it was reasonable for appellants to conclude that appellee was
asserting health care liability claims against them.

Appellants
filed their motion to dismiss on July 11, 2008.  Appellee had about two months notice
of the motion before the September 12, 2008 hearing.  Based on appellants= motion, appellee knew that
appellants contended he was asserting health care liability claims against
them.  However, appellee did not file a response to the motion until the
morning of the hearing.  In the motion, appellee asserted that his claims
against appellants were not health care liability claims and that appellants
had an evidentiary burden of establishing their status as health care
providers.  The record does not show that appellee made these positions known
to appellants before the morning of the hearing.  Appellee also filed his
amended petition on the morning of the hearing.  He removed medical terminology
from the allegations in his amended petition.  The trial court agreed with
appellee=s position
that appellants had an evidentiary burden of establishing their status as
health care providers and concluded that appellants had failed to meet their
burden.  The timing of appellee=s
response to appellants=
motion to dismiss prevented appellants from being able to present evidence in
response to appellee=s
assertions.  








Under
the circumstances in this case, we hold that the trial court abused its
discretion in denying appellants=
motion to continue the hearing on their motion to dismiss.  We sustain
appellants= fourth
issue.  The new hearing will provide appellants an opportunity to present
evidence on the issue of whether they are health care providers.  Based on our
ruling on appellants=
fourth issue, we need not address appellants=
second and third issues.  Tex. R. App.
P. 47.1.  Therefore, we do not address whether Dr. Anderson=s report complied with the
requirements of Section 74.351.

 

                                                               This
Court=s Ruling

We
reverse the trial court=s
order denying appellants=
motion to dismiss, and we remand this cause to the trial court for further
proceedings consistent with this opinion.

 

 

TERRY McCALL

JUSTICE

 

May 7, 2009

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]See Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842 (Tex. 2005).  





[2]See Brown v. Villegas, 202 S.W.3d 803 (Tex. App.CSan
Antonio 2006, no pet.).