Opinion to: SR TJ EVK ERA GCH LCH JB JS MM TGT












Opinion issued
August 31, 2010



                                                                                                                                                                                                                                                                                                                                                                        

 

                                                                                                                                                                                                                                                                                                                                                            

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00523-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



TTHR, L.P. d/b/a Presbyterian Hospital of Denton, Appellant

 

V.

 

NORMELL W. GUYDEN,
INDIVIDUALLY AND AS HEIR TO THE ESTATE OF NATALIE J. GUYDEN, DECEASED, Appellee

 

 



On Appeal from 113th District Court

Harris County, Texas

Trial Court Cause No. 2008-34015

 

 



o p i n i o n

In its sole
issue in this interlocutory appeal, appellant, TTHR, L.P. d/b/a Presbyterian
Hospital of Denton, contends that the trial court abused its discretion when it
denied appellant’s motion to dismiss appellee Normell W. Guyden’s[1]
medical malpractice suit because Guyden did not file a sufficient expert
report.[2]  We affirm.

Background

After she
nearly drowned, Natalie Guyden was taken to Presbyterian Hospital in Denton,
Texas, and treated at the hospital for acute respiratory and renal failure,
pneumonia, diabetes mellitus, and anoxic encephalopathy.  After almost two months in the hospital, Natalie
developed a urinary tract infection (UTI) which was treated with the antibiotic
Levaquin.  Despite laboratory tests
indicating that Natalie’s UTI was caused by a strain of E. coli bacteria resistant to Levaquin, no other antibiotic was
substituted.   

Notwithstanding
her infection, on June 15, 2006, Natalie was transferred by ambulance to
Courtyard Convalescent Center, a long-term-care facility in Houston.  Although Presbyterian Hospital was required to prepare a
memorandum of transfer informing Courtyard of all relevant diagnoses and
treatments, Natalie’s memorandum of transfer was silent as to both her UTI and
her laboratory results.  Notes from
Courtyard documenting information that it received from a Presbyterian Hospital nurse also
make no mention of Natalie’s UTI.  As a
result, Natalie’s infection continued unchecked and she died within a day of
arriving at Courtyard.  The cause of
death was listed as urosepsis.  

Guyden
filed suit against Presbyterian
Hospital, Courtyard, and doctors Christopher
Lockhart and Jamal Mubarak.  On September
25, 2008, Guyden timely served all four defendants with the required expert report and curriculum
vitae of his expert, George M. Matuschak, M.D. 
Defendant Presbyterian Hospital filed objections to the sufficiency of
Dr. Matuschak’s expert report on October 21, 2008.[3]  Six months later, on March 31, 2009, Presbyterian
Hospital filed a motion to dismiss pursuant to section 74.351(b) of the Texas Civil Practice and Remedies Code.  See
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b) (Vernon Supp. 2009).  After
a hearing, the trial court overruled Presbyterian Hospital’s objections and denied the motion
to dismiss.  This interlocutory appeal
ensued.                                                                                    
                              

Discussion

Presbyterian Hospital asserts that the trial
court abused its discretion when it determined that Dr. Matuschak’s expert
report satisfied the statutory requirements of Chapter 74 of the Texas Civil
Practice and Remedies Code. 

I.                 
Applicable Law

A.   Standard
of Review

We review a trial court’s decision on
a motion to dismiss a case for failure to comply with section 74.351 for an
abuse of discretion.  See Am. Transitional Care Centers v.
Palacios, 46 S.W.3d 873, 877 (Tex. 2001); Tex. Civ. Prac. & Rem. Code Ann. § 74.351(Vernon
Supp. 2009).  Although we defer to
the trial court’s factual determinations, we review questions of law de
novo.  Rittmer v.
Garza, 65 S.W.3d 718, 722 (Tex. App.—Houston [14th Dist.] 2001, no pet.).  To the extent that resolution of the issue
before the trial court requires interpretation of the statute itself, we apply
a de novo standard.  Buck v. Blum,
130 S.W.3d 285, 290 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

B.  
Chapter 74 Expert Report Requirements

Section
74.351 ostensibly serves as a ‘gate-keeper’ through which no medical negligence
causes of action may proceed until the claimant has
made a good-faith effort to demonstrate that at least one expert believes that a breach of the applicable standard
of care caused the claimed injury.  See Tex. Civ. Prac. &
Rem. Code Ann. § 74.351; Murphy v.
Russell, 167 S.W.3d 835, 838 (Tex. 2005).  A report need not marshal all of
the plaintiff’s proof but it must include the expert’s opinions on the three
statutory elements: standard of care, breach, and causation.  See Palacios, 46 S.W.3d at 878, 880;
Spitzer v. Berry, 247 S.W.3d 747, 750 (Tex. App.—Tyler 2008, pet. denied)
(quoting Palacios, 46 S.W.3d at 880) (stating “fair summary” is
“something less than a full statement” of applicable standard of care, how it was breached, and how that breach
caused injury).  

To constitute a good faith effort,
the report must provide enough information to fulfill two purposes: (1) inform
the defendant of the specific conduct that the plaintiff has called into
question; and (2) provide a basis for the trial court to conclude that the
claims have merit.  Palacios, 46 S.W.3d at 879.  A
report that merely states the expert’s conclusions as to the standard of care,
breach, and causation does not fulfill these two purposes.  Id. 
The expert must explain the basis for his statements and link his
conclusions to the facts.  Bowie Mem’l Hosp. v. Wright, 79
S.W.3d 48, 52 (Tex. 2002) (citing Earle v. Ratliff, 998 S.W.2d 882, 890
(Tex. 1999)).  The trial court may not
draw any inferences, but must rely exclusively on the information contained
within the report’s four corners.  See
Palacios, 46 S.W.3d at 878.  In addition to setting forth the requisite
criteria, a Chapter 74 report must also be authored by a qualified “expert.”  Tex.
Civ. Prac. & Rem. Code Ann.
§ 74.351(r)(6).



II.              
 Adequacy
of Expert Report

Presbyterian Hospital argues that the expert
report submitted by Guyden does not satisfy the requirements of section 74.351
because Dr. Matuschak, Guyden’s expert, is not qualified to opine on causation
and, even if he is qualified, his “conclusory statements” are not a “fair
summary” of the standard of care, breach, or causation as to Presbyterian
Hospital. 

A.   Qualifications
of Experts

Presbyterian Hospital contends
that Dr. Matuschak is unqualified to opine on causation because he is not
licensed to practice medicine in Texas.[4]  Section 74.351, entitled “Expert Report,”
defines an “Expert,” “with respect to a person giving opinion testimony about
the causal relationship between the injury, harm or damages claimed and the
alleged departure from the applicable standard of care in any health care
liability claim” in a Chapter 74 report as “a physician who is otherwise
qualified to render opinions on such causal relationship under the Texas Rules
of Evidence.”  Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(C).  Under the Texas Rules of Evidence, “[i]f
scientific, technical, or other specialized knowledge will assist the trier of
fact to understand the evidence or to determine a fact in issue, a witness
qualified as an expert by knowledge, skill, experience, training, or education
may testify thereto in the form of an opinion or otherwise.”  Tex.
R. Evid. 702; see also Broders
v. Heise, 924 S.W.2d 148,
153 (Tex. 1996).  

Although neither section 74.351(r)(5)(C) nor the Texas Rules of Evidence explicitly require a
physician to be licensed in Texas, Presbyterian Hospital argues that we must nonetheless
find Dr. Matuschak disqualified on this basis. 
According to Presbyterian
Hospital, because the term “physician” is not defined in section 74.351(r)(5)(C)
or anywhere else in the same subchapter, we must apply the general definition
of “physician” as set forth in Subchapter A of Chapter 74 (sections 74.001–.004).  Subchapter A defines “physician” to mean, inter
alia, “an individual licensed
to practice medicine in this state.” 
Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(23)(A) (Vernon 2005) (emphasis added).  

Section 74.001(a)(23) of
Subchapter A, however, was not intended to define who would or would not be
qualified to author an expert report under section 754.351, but rather which type of defendants were entitled to the
protections and benefits of Chapter 74 as a whole.[5]  Such an interpretation comports with the legislature’s
intended purpose for enacting Chapter 74—to protect Texas physicians and other health care providers from the state’s “medical
malpractice insurance crisis.”  See Tex. Civ. Prac. & Rem. Code Ann.
§ 74.001 historical and
statutory notes [Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11,
2003 Tex. Gen. Laws 847, 884]. 

Moreover, the cases that Presbyterian Hospital
cites in support of its argument that the general definition of “physician” set
forth in section 74.001(a)(23) applies to section
74.351 are neither dispositive nor are they persuasive with regard to this
issue.  The courts in these cases either
(1) were never presented with the question of whether a physician who was not
licensed to practice medicine in Texas, but was licensed in another state, was
qualified to opine as to causation in a Chapter 74 expert report[6]
or (2) never reached the question because the purported expert was either
licensed in Texas or not licensed at all.[7]  In fact, some of these cases actually support
the proposition that section 74.001(a)(23) was
intended to define the type of claims subject to Chapter 74 and the scope of defendants entitled to
the protections of the chapter.  See generally
Pro Path Servs., L.L.P. v. Koch, 192 S.W.3d 667, 672 (Tex. App.—Dallas
2006, pet. denied) (stating that laboratory entitled to benefits and protection
of Chapter 74 because it met definition of “physician” set forth in
section 74.001(a)(23)); Hunsucker v. Fustok, 238 S.W.3d 421, 429
(Tex. App.—Houston [1st Dist.] 2007, no pet.) (determining
that appellant’s common-law fraud, breach of warranty, and tort claims were
“health care liability claim[s],” and therefore, subject to requirements of
section 74.351’s predecessor  statute).

After considering Presbyterian Hospital’s arguments
and authorities, we decline to read a Texas licensure requirement into section 74.351(r)(5)(C) by way of  section
74.001(a)(23).[8]  This result comports with the holdings of
three of our sister courts that determined—albeit for other reasons—that a
physician need not be licensed in Texas in order to author a Chapter 74 expert
report.  See Kelly v. Rendon, 255
S.W.3d 665, 675 (Tex. App.—Houston [14th Dist.] 2008, no pet.); Springer
v. Johnson, 280 S.W.3d 322, 327–30
(Tex. App.—Amarillo 2008, no pet.); Tenet
Hosps. Ltd. v. Boada, 304 S.W.3d 528, 538–39 (Tex. App.—El Paso 2009, pet. denied). 
Although we do not adopt the analysis of our sister courts, we
nonetheless agree with their ultimate conclusions. 

When no applicable statutory definition is provided,
such as here, we accept the ordinary meaning of words used unless a contrary
intention is apparent from the context, or unless such a construction
leads to absurd results.  City of Rockwall v. Hughes, 246 S.W.3d 621, 625–26 (Tex.
2008).  The term “physician,” as
it is ordinarily used, refers to a person who is licensed to practice
medicine.  See Compact Oxford English Dictionary 1332 (2d ed.
1993).  It does not impose any
geographical limits.  This interpretation is in accord with section 74.401,
entitled “Qualifications of Expert Witness in Suit Against
a Physician,” that is set out in Subchapter I, entitled “Expert
Witnesses.”  In regard to “expert witnesses,” section 74.401 defines
“physician” as a person who is “licensed to practice medicine in one or more
states in the United States” or a “graduate of a medical school . . . .”  Tex.
Civ. Prac. & Rem. Code Ann. § 74.401(g) (Vernon 2005). 

Here, Dr. Matuschak’s report and
curriculum vitae reflect that he is a licensed physician in good standing in
the States of Pennsylvania and Missouri who has been practicing medicine since
1977.  He is a board certified internist
with subspecialty board certifications in Critical Care Medicine and Pulmonary
Disease.  Dr. Matuschak has also provided
medical evaluation, care, and treatment to acute and chronically ill patients
such as Natalie with urinary tract infections and urosepsis, and he has
“managed and/or directed the management of hundreds of patients with medical
conditions similar to the circumstances seen in Natalie Guyden’s case.”  Dr. Matuschak’s report and curriculum vitae
also state that Dr. Matuschak has experience assisting in and supervising the
transfer of such patients to long-term-care facilities, and has knowledge
regarding the documentation required for such transfers.

Thus, we conclude that Dr. Matuschak’s qualifications,
as set forth in his report and his curriculum vitae, sufficiently qualify him
to opine on the proper treatment and care of acute and chronically ill patients
such as Natalie who develop urinary tract infections and the complications that
flow from the failure to properly manage or treat such infections.  Accordingly, we conclude that the trial court
did not abuse its discretion in finding Dr. Matuschak qualified by knowledge,
skill, experience, training, or education to opine as to causation, and that
such testimony would assist the trier of fact to understand the evidence or to
determine a fact in issue. 
Because Dr. Matuschak is licensed to practice medicine and he is otherwise
qualified to render opinions on causation under Texas Rule of Evidence 702, the
trial court did not abuse its discretion in finding him qualified to opine as
to causation in an expert report under section 74.351(r)(5)(C).

We overrule Presbyterian Hospital’s
first argument. 

B.   Standard
of Care, Breach, and Causation

After devoting the lion’s share
of its appellate brief to challenging Dr. Matuschak’s qualifications, Presbyterian Hospital perfunctorily
argues that Dr. Matuschak’s report is deficient because it does not provide a
“fair summary” of his opinions as to standard of care, breach, and
causation.  Specifically, Presbyterian Hospital
argues that the report merely states that the hospital “should have
communicated ‘all relevant diagnoses and treatments,’” without identifying what
Presbyterian Hospital
should have done differently or “what makes one diagnoses or treatment
‘relevant,’ and another not ‘relevant.’” 
See Palacios, 46 S.W.3d
at 880 (“Identifying the standard of care is critical: Whether a defendant
breached his or her duty to a patient cannot be determined absent specific
information about what the defendant should have done differently.”)  With regard to breach and causation, Presbyterian Hospital
also argues that Dr. Matuschak’s statement that the hospital failed to
“effectively communicate relevant diagnoses and treatments” and that “but for
the negligence of the Hospital. . . Natalie Guyden would not have suffered from
and died from urosepsis” is “completely conclusory” because it is not supported
by any facts.  

Presbyterian Hospital, however, has taken Dr.
Matuschak’s statements out of context and attempted to analyze these statements
in a vacuum, rather than looking to the report as a whole.  In his report, Dr. Matuschak states that a
urine specimen was collected from Natalie on June 12, 2006 and sent to Presbyterian Hospital’s
laboratory for testing, including culture and sensitivity (C&S)
studies.  The C&S report prepared by
the laboratory indicated that Natalie’s UTI was caused by a Levaquin-resistant
pathogen.  This information was available
to the Presbyterian
Hospital prior to Natalie’s discharge and transfer to Courtyard on June
15, 2006.  Despite the laboratory results
and the availability of other antibiotics, Natalie continued to be treated with
Levaquin.  Dr. Matuschak states that in
his professional opinion, had Natalie been taken off Levaquin and treated with
“an effective antibiotic based upon the urine C&S as detailed above,
Natalie would not have suffered and died from urosepsis.”  

With respect to the standard of care
applicable to Presbyterian
Hospital, Dr. Matuschak states in pertinent part:

The standards of
healthcare/nursing care dictate that an [sic] Presbyterian Hospital of Denton
via its employees or agents, administrators and/or nurses should have thoroughly communicated with the accepting long-term
care facility about Natalie Guyden’s UTI under treatment and pending laboratory
results if any.  The standards of
healthcare/nursing care dictate that Presbyterian Hospital of Denton via its
employees or agents, administrators and/or nurses should have notified the Center of Natalie’s UTI under treatment
and pending laboratory results if any via the Memorandum of Transfer.  The standards of healthcare/nursing care
dictate that Presbyterian Hospital of Denton via its employees or agents,
administrators and/or nurses should have
notified the Center of Natalie’s UTI under treatment and pending laboratory
results if any via the verbal transfer communications between Nurse Hanning
that occurred on June 15, 2006. 

 (Emphasis added.)

Having set forth the applicable
standard of care, Dr. Matuschak goes on to state that:

In contrast, the Memorandum
of Transfer for the Hospital does not contain any information about Natalie’s
UTI nor any information about any pending diagnostic studies, if any were
pending, concerning the UTI. Moreover, the notes from Courtyard documenting the
information received from the Hospital via Nurse Hanning on June 15, 2006 does
not contain any information about Natalie’s UTI nor any information about any
pending diagnostic studies, if any, concerning the UTI.  Thus, it is my medical professional opinion
that the Hospital’s healthcare/nursing care with respect to their failure to
communicate relevant information about Natalie’s evaluation and treatment for a
UTI represents healthcare/nursing care negligence.

With regard to causation, Dr. Matuschak states:

Furthermore, based upon my
qualifications discussed above and in my CV, the medical science discussed in the
“general section” above, the medical facts summarized above, that but for the
negligence of the Hospital as set forth in this section, Natalie Guyden would
not have suffered from and died from urosepsis. 
That is, more likely than not had the relevant medical information been
communicated to the Center by the Hospital the Center would have timely and
appropriately responded to the acute change in Natalie’s condition on June 15th
and 16th 2006 so that timely and appropriate treatment of her urosepsis
could have ensued.  Thus, it is my
professional opinion to a reasonable degree of medical probability that
Presbyterian Hospital of Denton’s negligent care was a proximate cause of
Natalie Guyden’s injuries from a urinary tract infection and her death from urosepsis.


Dr. Matuschak’s report identifies
three specific actions that the applicable standard of care required, but
Presbyterian failed to do, and sets forth sufficient facts linking Presbyterian Hospital’s
purported breaches to the alleged injury. 
See Bowie Mem’l Hosp., 79 S.W.3d at 52 (requiring expert to explain basis of his statements regarding causation and link his conclusions to facts).  Dr. Matuschak’s statements also make it clear
that he has informed Presbyterian
Hospital of the specific conduct that Guyden called into question—the
hospital’s failure to inform Courtyard of Natalie’s UTI diagnosis and treatment,
and pending laboratory results, if any—and he has provided sufficient
information for the trial court to conclude that Guyden’s claims have merit
with respect to Presbyterian.  See Palacios, 46 S.W.3d at 879
(stating expert report must inform defendant of specific conduct that plaintiff
has called into question and provide basis for trial court to conclude that
claims have merit).

Therefore, keeping in mind that section
74.351 expert reports are a preliminary method to show that
a plaintiff has a viable cause of action that is not frivolous or without
expert support, we hold that the trial court acted within its discretion in
concluding that Dr. Matuschak’s report represents an objective good faith
effort to identify and set forth how Presbyterian Hospital breached the
applicable standards of care and the causal relationship between those failures
and the injuries claimed.  

We overrule Presbyterian Hospital’s second,
third, and fourth arguments.

CONCLUSION

We affirm
the trial court’s order denying Presbyterian Hospital’s motion to dismiss.

 

 

 

 

                                                          Jim
Sharp

                                                          Justice


 

 

Panel
consists of Justices Jennings, Higley, and Sharp.











[1]           Guyden
is suing individually and as heir to the Estate of Natalie J. Guyden, deceased.





[2]           If a health care liability claimant
fails to serve an expert report within 120 days of filing suit, a defendant
physician or health care provider may file a motion with the trial court
requesting attorney’s fees and dismissal of the claims.  See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b) (Vernon Supp. 2009); see also Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (Vernon 2008) (allowing appeal
from interlocutory order that
denies all or part of relief sought by motion pursuant to section 74.351(b)).  






[3]           Neither
Dr. Mubarak nor Courtyard objected to the
sufficiency of Guyden’s initial Chapter 74 expert report.  Neither defendant is a party to this appeal.

Dr.
Lockhart also filed objections to Dr. Matuschak’s expert report on October 16,
2008.  After a non-evidentiary hearing on
November 10, 2008, the trial court denied Dr. Lockhart’s motion to dismiss and
overruled his objections to Dr. Matuschak’s report.  On December 1, 2008, Dr. Lockhart filed an
interlocutory appeal with this Court challenging the ruling.  This Court heard arguments and on July 16,
2009 issued a memorandum opinion reversing the ruling and remanding the case
for further proceedings.  Lockhart v. Guyden, No. 01-08-00983-CV, 2009 WL 2050983, at *4 (Tex. App.—Houston [1st  Dist.] July 16,
2009) (mem. op.).  The trial court
subsequently granted Guyden a 30-day extension of time to cure the report’s
deficiencies.  On September 15, 2009,
during the pendency of this appeal, Dr. Matuschak prepared and served an
amended expert report.  The amended
report, however, is not part of this appeal. 





[4]           Presbyterian
does not argue that Dr. Matuschak is not qualified to opine as to the
applicable standard of care or any breaches thereof.

 





[5]           See generally Tex. Civ. Prac. & Rem. Code Ann.
§ 74.001(a)(10)
(Vernon 2005) (defining “health care”); id. at § 74.001(a)(13) (defining “health care liability claim” as “a
cause of action against a health care provider or physician…”); id. at § 74.001(a)(12)(A)(vii) (defining “health care
provider” as “a health care institution”); id. at § 74.001(a)(11)(G),(H) (defining “health care institution” as a hospital
or hospital system); id. at § 74.001(a)(16),(17)
(defining “hospital” and “hospital system”); id. at § 74.001(a)(23)(A) (defining
“physician” as “an individual licensed to practice medicine in this state”).





[6]           See Pro Path Servs., L.L.P. v. Koch,
192 S.W.3d 667, 672 (Tex. App.—Dallas 2006, pet. denied) (stating that
laboratory entitled to benefits and protection of Chapter 74 because it met
definition of “physician” set forth in section 74.001(a)(23)); Hunsucker
v. Fustok, 238 S.W.3d 421, 429 (Tex. App.—Houston [1st Dist.] 2007, no
pet.) (determining that appellant’s common-law fraud, breach
of warranty, and tort claims were “health care liability claim[s]” and
affirming dismissal of claims for failure to submit expert report; court was
not presented with, and did not address, question of whether expert was
qualified to opine as to causation in a Chapter 74 expert report).  





[7]           See
Foster v. Zavala, 214
S.W.3d 106, 112 (Tex. App.—Eastland 2006, pet. denied) (purported expert
licensed to practice medicine in Texas); Li v. Billingsley, No.
05-08-00436-CV, 2009 WL 242523, at *2 (Tex.
App.—Dallas Feb. 3, 2009, no pet.) (mem. op.) (purported expert—a chiropractor—was not licensed to practice
medicine anywhere in United States); Azle Manor, Inc. v. Vaden, No.
02-08-00115-CV, 2008 WL 4831408, at *9 (Tex.
App.—Fort Worth Nov. 6, 2008, no pet.) (mem. op.) (purported expert licensed to practice medicine in Texas).





[8]           Section
74.401(g)(1) also defines the term “physician.”  This definition, however, only applies to
Subchapter I, and is likewise inapplicable to Subchapter H’s section 74.351(r)(5)(C).  See Tex.
Civ. Prac. & Rem. Code Ann.
§ 74.401(g)(1) (defining “physician” for purposes of  “this subchapter”).